HARRY J. CAPEHART, *et al.*

*v.*

BRADY CHURCH, *et al.*

(CC 787)

Submitted January 22, 1952. Decided February 26, 1952.

*Capehart, Miller & Capehart, Harold W. Calhoun,* for plaintiffs.

*Mahan, White & Higgins, Charles E. Mahan,* for defendants.

LOVINS, JUDGE:

This suit was instituted in the Circuit Court of McDowell County, by Harry J. Capehart, Leon P. Miller and Harry Capehart, Jr., attorneys, practicing law as partners under the firm name of Capehart, Miller & Capehart,

plaintiffs, against Brady Church, Glenn Church, and Halfdan Lee, Eugene H. Bird, Charles A. Coolidge, Paul C. Cabot, James L. Richards, Charles F. Adams, Edwards M. Farnsworth, Robert M. Folson, and H. S. Payson Rowe, Trustees of the Eastern Gas & Fuel Associates, a voluntary association of the Commonwealth of Massachusetts, commonly known as a Massachusetts Trust, defendants.

Plaintiffs sought recovery of compensation for legal services rendered defendants, Brady Church and Glenn Church, hereinafter referred to as "Churches", under a contract for a contingent fee; a determination of the value of property received by the Churches under an agreement between them and the defendant, Eastern Gas & Fuel Associates, hereinafter referred to as "Eastern"; discovery as to the terms of the agreement between the defendants; a lien on certain houses and buildings received by the Churches under the terms of such agreement; an accounting of rents received by the Churches from such property and a decretal judgment for one-fourth thereof; a holding that Eastern is secondarily liable for payment of plaintiff's fee; and general relief. In the alternative, plaintiffs asked that the court fix and decree a reasonable fee for legal services rendered the Churches by plaintiffs.

A demurrer filed by Eastern was sustained, and the case comes here on certificate with the questions raised upon that determination.

The allegations of the bill of complaint, being taken as true upon the demurrer filed by Eastern, present the following facts.

In November, 1950, plaintiffs were retained by the Churches to prosecute a claim on their behalf against A. R. Thompson and Company, a partnership, hereinafter referred to as "Thompson and Company". The contingent fee contract here considered was entered into, by the terms of which, plaintiffs were to receive, in consideration of their services, one-third of any sum recovered by the Churches as a result of litigation, and one-fourth of

any sum obtained from a compromise or settlement of the case.

Thompson and Company, for some time prior to 1947, had been engaged in the cutting and sawing of timber for Eastern, or its predecessor. In that operation they had erected a number of houses and buildings on land owned or held under lease by Eastern, with an understanding that the structures were to become the property of Thompson and Company.

On August 6, 1947, Thompson and Company sold the houses and buildings, along with other personal property, to the Churches. The consideration for the conveyance of the houses and buildings was $9,000. This property was included in a bill of sale executed on that date in which Thompson and Company covenanted that they had good title to the property conveyed; that they had a right to sell and convey the property; that such property was clear of all liens and encumbrances; and that they would warrant and defend against the claims of all persons. The Churches took and held possession of the houses and buildings until dispossessed by Eastern, which claimed ownership of the structures by virtue of its ownership of the premises on which they were situated.

The Churches then sought the advice of plaintiffs, who advised them that they had a claim against Thompson and Company for breach of the warranty contained in the bill of sale of August 6, 1947. The contingent fee contract in controversy was made, and an action of assumpsit was instituted by the plaintiffs in behalf of the Churches against Thompson and Company to recover the purchase price paid for the buildings. Notice of the attorney's contract was served upon Thompson and Company, along with the summons instituting the action.

Thompson and Company notified Eastern that they were relying upon their contract with that association with reference to ownership of the houses.

An agreement was reached between the defendants

whereby ownership by the Churches of the structures in dispute was recognized by Eastern, and Eastern was to pay the Churches for the use thereof. Upon consummation of the foregoing agreement, the Churches dismissed their action against Thompson and Company, took possession of the houses and buildings, and have since collected rent thereon from Eastern.

Plaintiffs say that for all practical purposes the agreement between the defendants was a compromise of the action of the Churches against Thompson and Company; that therefore, by virtue of their contingent fee contract, they are entitled to one-fourth of the value of the property received by the Churches under their agreement with Eastern; and that the defendants have "wrongfully, secretly and surreptitiously" conspired together "* * * with the intent and to the end that complainants would not and could not be able to collect their said fee * * *".

Eastern, the sole defendant demurring to the bill of complaint, contends that plaintiffs have an adequate remedy at law; that the plaintiffs do not state a cause of action against Eastern; that there is no equitable jurisdiction because there is no fiduciary or contractual relationship between plaintiffs and Eastern; that a trust or lien cannot be enforced in the absence of a *res* to which it can attach; and that the bill has stated no right to discovery.

The trial court sustained the demurrer to the bill on the grounds that the plaintiffs have an adequate remedy at law against the Churches; that plaintiffs have not prosecuted any action in behalf of the Churches against Thompson and Company; that such action should have been prosecuted or there should have been an allegation of non-liability on the part of Thompson and Company; and that the bill does not allege that the dispossession of the Churches by Eastern was wrongful.

Five questions are certified, but the certificate presents only two real questions: (1) Does a court of equity have jurisdiction of the cause pleaded in the bill of complaint?

(2) Do the plaintiffs have a cause of action against Eastern? The other questions certified involve reasons which tend to support the ruling of the trial court on the two basic questions.

It is well established that an attorney has a lien on the fruits of litigation to aid in the enforcement of a demand for his fee by resort to the property or money he has recovered for his client. Such liens may be classed as retaining liens and charging liens. "A retaining lien is the right of the attorney to retain possession of a client's documents, money, or other property which comes into the hands of the attorney professionally, until a general balance due him for professional services is paid." 7 C.J.S., Attorney and Client, Section 210. "A charging lien is the equitable right of an attorney to have fees and costs due him for services in a particular suit secured by the judgment or recovery in such suit, is based on equitable considerations, and differs from ordinary liens in that possession is not essential to the charging lien." 7 C.J.S., Attorney and Client, Section 211. See 5 Am. Jur., Attorneys at Law, Sections 209, 219. We have found no statute in this state on the subject of attorneys' fees other than Code, 30-2-15, which does not deal with liens.

We are not here concerned with a retaining lien. If the plaintiffs have a lien, it must be classified as a charging lien. Some authorities have characterized these liens as equitable rights, but the term "attorney's lien" is in general use.

This Court has applied the law with reference to attorneys' liens in several cases. It has been held that an attorney has a lien on a judgment or decree obtained by him for his client for services and disbursements in the case. *Renick* v. *Ludington, and Ford & Son* v. *Renick,* 16 W.Va. 378; *Bent* v. *Lipscomb, et al.,* 45 W.Va. 183, 31 S. E. 907. But where the fee of an attorney rests on a special contract and is to be a percentage of the amount recovered, only the amount actually received on the judgment is the basis for compensation. *Robertson* v. *Pettery,*

114 W. Va. 78, 170 S. E. 901. An attorney may avoid a collusive settlement made between his client and his adversary for the purpose of defeating his lien, the attorney having an inchoate right in the chose in action. *In Matter of Werkman,* 122 W. Va. 583, 13 S. E. 2d 73; *Burkhart* v. *Scott,* 69 W. Va. 694, 72 S. E. 784. In certain circumstances an attorney may proceed to final judgment in the name of his client for his own benefit. *Burkhart* v. *Scott, supra.* "An agreement between the payee of a note and an attorney that the latter should collect the note and have for his fee a fixed portion of what he could collect, constitutes an immediate equitable assignment *pro tanto* of that portion. A collusive settlement, prior to collection or suit, between payee and payor, after the latter has notice of the attorney's assignment, does not extinguish it." *Mirasola* v. *Rodgers,* 120 W. Va. 685, 200 S. E. 30. A contract between an attorney and client for contingent fees, which provides that the client can not make a compromise, is void as against public policy, but the remaining portion of such agreement, if valid, is enforceable. *Butler* v. *Young,* 121 W. Va. 176, 2 S. E. 2d 250. "An attorney's special lien for pay for his services out of a fund in court exists only where his client is entitled to participate in that fund. He cannot claim it out of a fund decreed to go to a party under a right adverse to that of the party represented by the attorney. Such party cannot be compelled to pay for the services of an attorney rendered against him." *Schmertz* v. *Hammond,* 51 W. Va. 408, 41 S. E. 184. See Annotations, 93 A.L.R. 667.

The decided cases in this state have dealt with questions relating to liens as between the attorney, his client, or the adversary of his client. We have found no case in this jurisdiction where a stranger to the litigation in which the services were rendered has been held liable.

Eastern was a stranger to the litigation between Churches and Thompson and Company. It may be, as alleged in the bill of complaint, that Eastern had a vital and important interest in the result of the pending action

of assumpsit by Churches and against Thompson and Company, but we find no contract, express or implied, imposing any duty which Eastern owes to the plaintiffs. We have found no principle of law authorizing the imposition of such duty on Eastern. Treating the allegations of the bill as true, we can see no cause of action alleged in the bill against Eastern. It is neither primarily nor secondarily liable for the fees for professional services of the plaintiffs.

The Churches are not parties to this certification, since they have not answered, pleaded, or demurred to the bill of complaint, and this opinion is not to be construed as expressing any opinion relative to the rights of the plaintiffs as against them. We deal solely with the rights of the plaintiffs as against Eastern. It is not meant to preclude the plaintiffs from their remedies at law, if any they have, against Eastern. Plaintiffs may have an adequate remedy at law, but that question is not here for decision.

No trust or fiduciary relationship between the plaintiffs and Eastern is alleged in the bill of complaint. Therefore, equity can not assume jurisdiction on that ground. The bill of complaint is indefinite as to whether the houses which were the subject of litigation between the Churches and Thompson and Company are now owned by Churches, and it is not disclosed whether there is or is not a trust *res*.

In view of the insufficiency of the bill of complaint relative to whether plaintiffs have a contractual or fiduciary relationship, it would seem that the prayer for accounting is improper. *Lumber Co.* v. *Neill,* 77 W. Va. 470, 87 S. E. 855; *Peterson* v. *Smith,* 75 W. Va. 553, 84 S. E. 250; *Wilson* v. *Kennedy,* 63 W. Va. 1, 59 S. E. 736. It is not the function of an accounting to establish by testimony the allegations of the bill. *Tilden* v. *Maslin,* 5 W. Va. 377.

The bill prays for discovery, but, as hereinabove stated, a cause for relief against Eastern is not stated. Therefore, plaintiffs are not entitled to discovery as to Eastern.

*Munson* v. *Insurance Co.,* 55 W. Va. 423, 47 S. E. 160. See *Warren* v. *Boggs,* 83 W. Va. 89, 97 S. E. 589.

We hold that the ruling of the Circuit Court of McDowell County in sustaining a demurrer of Eastern to the bill is without error. We reiterate that this opinion shall not be construed to hold the bill of complaint bad on demurrer of the Churches, and we express no views as to the validity of the bill of complaint as applied to them. The ruling of the Circuit Court of McDowell County is affirmed.

*Affirmed.*