363 P.2d 617

Application of David A. GUBERMAN for admission to the State Bar of Arizona.

No. 7050.

Supreme Court of Arizona.

En Banc.

July 14, 1961.

William P. Mahoney, Jr., and Henderson Stockton, Phoenix, for applicant.

Charles R. Hoover, Phoenix, representing the State Bar of Arizona.

UDALL, Justice.

Applicant graduated from the Law School of Ohio State University in December, 1939, and was admitted to practice in the state courts of Ohio, August 16, 1940. He engaged in the practice of law in that state as a member of the bar in good standing until he removed to Arizona in 1948. Shortly thereafter applicant, having established residence in Arizona, applied for admission to the practice of law in Arizona. His application was received and he was permitted to take the examination in July of 1951. Although it subsequently appeared that he successfully passed the examination he was not so notified but rather after some proceedings was notified in December of 1951 that his application for admission to the practice of law was denied. It appears in the record that the reason for denying the application was that applicant had failed to carry the burden of showing that he possessed good moral character.

In March of 1959, applicant obtained permission and reapplied for admission to the State Bar. This application was rejected in July of 1959 without giving a reason therefor. After considerable proceedings and hearings, one of which was in this court, a great body of evidence was accumulated and the committee refused to recommend that the applicant be admitted to the practice of law in this state. The present application is the culmination of all these proceedings. The Committee on Examinations of the State Bar opposes the application for the reason that it thinks applicant has failed to show good moral character.

Almost all evidence upon which the committee based its recommendation was

from the applicant himself. At all the hearings he has been most open and candid, revealing in great detail the nature and extent of his activities over a great many years. There was in this case a "confidential file" held by the committee which applicant was never permitted to see or consider. In light of Application of Burke, 87 Ariz. 336, 351 P.2d 169, that confidential file will remain such and the confidence will not be breached by this court. It is our own observation however that nothing of great significance appears in that file which has not otherwise been made a part of the nonconfidential record in this case. In any event the Burke case forecloses the use of this file as a basis for keeping applicant from the practice of law when he has had no opportunity to meet and rebut any possibly derogatory matters contained therein.

The burden of proving good moral character is not easily met. An applicant is substantially confined to the production of opinion evidence by those who know him. In this case the record is more than amply filled with such evidence. The letter writers on behalf of applicant range from Rabbis and a state governor to business and social associates. Commendatory letters from practicing attorneys from Arizona and Ohio are in the file. They unqualifiedly attest applicant's good moral character. In addition to letters applicant produced testimony of his activities as a church,

family and community leader. In all he showed himself to be a model of moral propriety. He was in fact entrusted with the duty to teach ethics to the youth of his church group. In such duty the evidence showed that he discharged it with excellence.

In fact the record shows that as an initial affirmative matter, applicant abundantly discharged his burden of showing good moral character. "Where, as here, the applicant has borne the burden of producing evidence of his good character, then he may not be excluded from the practice of law unless that good-character evidence is refuted by *competent* evidence of character defects." Application of Burke, supra, 87 Ariz. at page 339, 351 P.2d at page 172. In this case there were certain things which appeared from applicant's own testimony and from the investigation which the committee alleges are refutory of his showing of good moral character.

On the record there appears to be but one item which clearly tends to show a lack of good moral character. This item was applicant's own testimony in response to a request of certain persons (initiated by those persons and not applicant) applicant attempted to find for them legal counsel who would handle certain claims they had against the Arizona Water Users Association. After some refusal by certain lawyers he finally found a lawyer willing to take the matter and thereafter entered into

an agreement with that lawyer to aid in the preparation of the case and to divide the fee equally on two conditions: (1) that the case be successfully prosecuted and (2) that applicant eventually be admitted to the bar. In fact applicant did aid in the preparation of the case doing research, memo writing, investigation and interviewing of witnesses. Since applicant was not admitted to the bar he did not get one-half the fee but was paid at a rate of about $2.50 per hour for the time he devoted to the preparation of the case.

Fee splitting with a person not admitted to practice the law is clearly a violation of the canons of professional ethics. Canon 34. A non-lawyer who is knowingly a party to such an arrangement indulges in conduct clearly derogatory of his moral fitness to practice the law. However, this conduct took place more than ten years ago. Standing alone it could not now be sufficient to show a present lack of good moral character. Under Rule 41, Rules of the Supreme Court, 17 A.R.S., even a person disbarred for unethical conduct may be readmitted upon a proper showing that during an appropriate intervening period his conduct shows a reformation of moral character. Even in case of an indefinite period of disbarment application for readmission may be made within as little as two years of the date of disbarment.

The question then becomes: What does the record show about the intervening period of ten years which, when considered in conjunction with his prior conduct, shows either a present presence or absence of good moral character?

Since 1958 the committee admits that there is nothing in the record which would adverse applicant's showing of good moral character. For this most recent period the committee argues, to use its language, that "a leopard never changes its spots." Such doctrine is hostile to the rules of this court. This can be no more clearly demonstrated than by Rule 41 relating to the readmission of persons previously disbarred. Further, the analogy of the leopard and the doctrine derived therefrom is fallacious and inapplicable to the issue of good moral character. Almost universal human experience dictates that moral character can and does change both for better and worse—examples of great extremes of both are widely known. The great object of a thousandfold societies, foremost of which are our religious institutions, is based on an almost universal belief that moral character can be improved. In fact, it is popular in our times to rationalize penal sanctions as a matter of reform rather than retribution or mere deterrence.

. This brings us to the only real issue which remains. Does the evidence of ap-

plicant's conduct between 1950 and 1958 raise an inference of non-reform sufficient to defeat applicant's attempt to carry the burden of showing present good moral character? We think not.

The sole and whole issue resolves itself into a consideration of the impact of the committee's claim that applicant engaged in the unauthorized practice of the law from 1953 to 1958 by carrying on the business of an estate planner.

It is very significant that the Arizona Bar's Committee on Unauthorized Practice called applicant before it in connection with his estate planning and, after full and candid disclosure of all his activities and independent research of the authorities, concluded there was no basis for proceeding against applicant.

The briefs in this case are full of dispute about whether applicant's activities constituted unauthorized practice of the law. The extent of the argument clearly demonstrates that the matter has been so disputed that at the time of his activities applicant had no clear guideline on the subject. The absence of a clear ruling on the matter and the presence of great dispute coupled with the action of the Unauthorized Practice Committee completely negative any suggestion that applicant's activities as an estate planner show he is wanting in good moral character even if the ultimate determination of the dispute resolves the issue on the side of unauthorized practice.

For the foregoing reasons we conclude that on the whole record applicant has carried the burden of showing good moral character. Since applicant has already passed the bar examination once and no issue has been raised as to his proficiency in knowledge of the law it is ordered that upon his subscribing to the oath and the payment of the customary fee, the Clerk issue to David A. Guberman a Certificate of Admission to practice law and that he be admitted to membership in the State Bar of Arizona.

STRUCKMEYER, C. J., BERNSTEIN, V. C. J., and JENNINGS, J., and ROBERT E. McGHEE, Superior Court Judge, concur.

Note: LOCKWOOD, J., having been out of the state when this matter was first considered, the Honorable ROBERT E. McGHEE, Judge of Superior Court, Gila County, was called to participate in the determination of this appeal.