Gaylon Arnett DUNN, Jr., Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Supreme Court of Kentucky.

Oct. 31, 1978.

Rehearing Denied Dec. 19, 1978.

Jack E. Farley, Public Advocate, Timothy T. Riddell, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., Martin Glazer, Asst. Atty. Gen., Frankfort, for appellee.

STERNBERG, Justice.

The appellant, Gaylon Arnett Dunn, Jr., was indicted by the Fulton County Grand Jury for the armed robberies of "Holiday Inn" and "Big John's Supermarket" in Fulton, Kentucky. The appellant denied committing each of the offenses and, in addition, pled not guilty by reason of insanity. Contrary to his plea, the appellant was found guilty on each charge and sentenced to imprisonment for 20 years on each count, with the sentences to run concurrently.

On October 7, 1976, the appellant, wearing a stocking mask, surprised Robert Davis, a former police officer, by jumping from bushes outside the Holiday Inn and pointing a .25-caliber pistol at him. Holding the pistol to Davis' back, the appellant proceeded into the motel with Davis, where he accosted the clerk and demanded money from the cash drawer. The clerk responded, whereupon the appellant took the money and departed.

On October 18, 1976, the appellant, again wearing a stocking mask, robbed Big John's Supermarket flourishing a .25-caliber pistol. The robbery took place in full view of several clerks and customers. After receiving the money from the cashier, he left.

On this appeal the appellant raises three issues.

"I. Appellant was Denied his Federal and his State Constitutional Right to be Represented by Counsel at Trial."

As to this first issue, it is beyond cavil that the appellant has a constitutional right to be represented by competent and adequate counsel. This is pure and simple "horn-book law" and this court has never held otherwise. It is rooted in his constitutional right to a fair and impartial trial. A person charged with a criminal offense must be afforded a fair trial and nothing less than a fair trial will satisfy the constitutional requirements.

The difficulty that we find with the appellant's position is that not only did the trial judge provide the appellant with counsel, but the appellant proceeded to act as his own counsel. Appointed counsel sat with the appellant and from time to time took part in the proceedings, and, at appellant's request, the court permitted the appellant's brother also to sit with him during the trial. Appellate counsel argues that the mental condition of his client was such that he did not, and could not, rationally survey the seriousness of the charges and the advisability of being represented by someone skilled in the law. The appellant, therefore, charges that the trial judge should have advised him of the seriousness of the charges and of the advisability of being represented by skilled counsel. The conduct of appellant, as disclosed by the record, in presenting his defenses puts the lie to this argument.

In *Short v. Commonwealth,* Ky., 519 S.W.2d 828 (1975), we recognized that a defendant can waive his constitutional right to be represented by counsel, provided he does so knowingly. In *House v. Commonwealth,* Ky., 487 S.W.2d 917 (1972), we held that a defendant may be required to proceed to trial with counsel not of his own choosing. In *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Supreme Court of the United States points out that a defendant has a constitutional right to represent himself.

An overview of the proceedings in the trial court is necessary to the determination of this issue, to-wit:

10/ 7/76   Holiday Inn robbed.

10/18/76   Big John's Supermarket robbed.

1/24/77   Appellant arrested on two warrants, each charging robbery in the first degree (KRS 515.020).

2/ 8/77   Appellant indicated by the Fulton County Grand Jury.

2/ 8/77   Appellant arrested on offenses charged in indictment.

The following pro se proceedings were had:

2/11/77   4-page longhand "Motion for Appointment of Competent Counsel." (Due to appellant's indigency.)

2/11/77   1-page longhand transmittal letter with filing instructions.

2/22/77   1-page typewritten "Motion for Reduction of Bail."

2/22/77   1-page typewritten "Motion for Bail on Personal Recognizance."

2/22/77   5-page typewritten "Motion for Speedy Trial and Petition for Guardianship by the Court." (United States District Court)

2/22/77   1-page typewritten "Motion to Dismiss" the two-count indictment.

2/22/77   7-page typewritten "Outline of the Facts, Comments, Conclusions, and Tentative Defense Approach."

2/22/77   1-page typewritten transmittal letter with instructions for filing the February 22, 1977 motions.

2/22/77   1-page typewritten "Motion for Bill of Particulars" and minutes of grand jury. (Furnished 3/25/77 and 4/22/77).

2/22/77   4-page typewritten statement of the "Facts of the Case" in support of his motion for bill of particulars.

3/17/77   2-page typewritten "Petition for Writ of Habeas Corpus."

3/17/77   7-page typewritten "Motion by Defendant to Dismiss Indictment."

3/17/77   8-page typewritten "A Statement of the Case."

3/17/77   1-page typewritten "Petition for Writ of Mandamus" directed to Chief of Police of Fulton, Kentucky, for certain information and evidence.

3/17/77   1-page typewritten transmittal letter with instructions.

3/17/77   Copy of one-page typewritten letter addressed to Assistant Commonwealth's Attorney requesting information.

3/30/77   2-page typewritten "Motion to Quash Indictment."

4/ 4/77   2-page typewritten "Motion for Pretrial Conference for a Ruling Upon the Admissibility of Prejudicial Evidence," with citations of legal authorities.

4/ 4/77   1-page typewritten "Subpoena List of Hostile Witnesses," consisting of 12 persons.

4/12/77   1-page typewritten "Subpoena List of Witnesses," consisting of five persons (not designated as hostile).

4/25/77   1-page typewritten list of "Defendant's Supplementary Witness Subpoena List," consisting of one person.

TRIAL APRIL 28–29, 1977

5/ 3/77   6-page typewritten "Motion for New Trial."

5/ 3/77   2-page typewritten supplementary "Motion for New Trial."

5/ 3/77   2-page longhand unstyled request for post-trial relief.

5/ 4/77   2-page typewritten "Memorandum in Support of Motion for New Trial."

5/ 9/77   1-page typewritten "Notice of Appeal."

5/12/77   1-page typewritten "Defendant's Prescriptive Statement in Negation of Judgment and Sentence."

5/12/77   1-page typewritten "Motion for Transmittal of Documents" to the Supreme Court of Kentucky.

5/16/77   A typewritten "Notice of Appeal" filed by D. L. McNeill, designated as Public Defender. (This is the same person who was appointed by the court as counsel for appellant.)

6/28/77   "Motion to Proceed on Appeal In Forma Pauperis" filed by D. L. McNeill.

6/28/77   "Motion for Extension of Time for Filing Record on Appeal" filed by D. L. McNeill.

The transcript of record reveals that the trial started on April 28, 1977, and ended on the following day. The appellant sought and was granted permission for his brother, Maurice Dunn, to sit and advise with him during the trial. The court-appointed counsel was not acceptable to the appellant because, as charged by appellant, he was 86 years of age, hard of hearing, and had, just a few months prior, successfully represented his wife in their divorce action. The appellant chose to represent himself; however, throughout the trial the appointed counsel did sit with appellant and from time to time did participate in the proceedings. The record discloses that appellant's waiver of counsel was intelligently, competently, understandingly and voluntarily made. *Sizemore v. Commonwealth*, Ky., 450 S.W.2d 497 (1970). Also, the transcript reveals that both the trial court and the Commonwealth's Attorney extended liberties to the appellant in the conduct of his

defense beyond that which would have ordinarily been granted a lawyer in making a defense.

■ Counsel for appellant cites the case of *Fultz v. Commonwealth*, Ky., 398 S.W.2d 881 (1966), for the proposition that a defendant is entitled to reject appointed counsel and to have a substitute appointed if that defendant demonstrates good cause for rejecting said counsel. Although appellant had requested the appointment of designated counsel, he has not demonstrated any good cause for having rejected the court-appointed counsel. As a matter of fact, the trial court, in speaking of the appointed counsel, said:

"The Court notes further that the Honorable Dee L. McNeill has practiced law in this state for sixty years and that he probably has handled more criminal cases than any lawyer in the state alive today. The Court notes that Dee L. McNeill is very active in the practice of law and very capable of handling matters of this kind."

A review of the entire record unequivocally demonstrates that the appellant himself either was skilled in the law or, if not himself skilled in the law, had the assistance of skilled counsel in his pretrial and post trial procedures and in his courtroom demeanor. This court does not believe that this case could have been handled in the manner in which it was handled by anyone unskilled in the law. A trial judge who is on the scene observing what is going on and constantly appraising the situation has a discretion in his appointment. We do not believe that the trial court acted in a manner clearly erroneous in refusing to appoint counsel other than the one who was appointed. Appellant does not appear to have been prejudiced by representing himself in the manner disclosed by the record.

"II. Appellant was Denied Due Process of Law and a Fair Trial as the Result of the Trial Court's Failure to Conduct a Hearing on the Issue of Appellant's Competency to Stand Trial."

■ Secondly, counsel for appellant argues that the trial court should have conducted a hearing on the issue of the appellant's competency to stand trial.

RCr 8.06 provides:

"If upon arraignment or during the proceedings there are reasonable grounds to believe that the defendant is insane, the proceedings shall be postponed and the issue of sanity determined as provided by law."

The appellant advised the trial judge that he suffers from psychotic schizophrenia, paranoid type, chronic. No medical testimony was offered to support this allegation. Dr. White, appellant's regular doctor, refused to diagnose appellant's condition in such language. The appellant, however, does take medication daily to arrest his depressive attitude, and he receives social security medical benefits in the sum of $194.80 per month. His check is mailed to his bank, where it is deposited to his account. The effect of appellant's condition, whatever it is, is to cause him from time to time to become depressed and to avoid people. There was no testimony that the appellant at any time is violent or that he does anything unusual or bizarre other than to stay away from home and away from people for a week or so at a time. After overcoming his despondency, he returns to his home and normal living conditions. The appellant argues that his condition, both prior to and during the trial, was such as to manifest reasonable grounds to believe that he was insane, thereby compelling a hearing to determine whether he comprehended the nature and consequences of the proceedings against him and could participate rationally in his defense.

The standard laid down by this court in *Commonwealth v. Strickland*, Ky., 375 S.W.2d 701 (1964), is:

"The terms 'insane,' 'unsound mind,' and 'mental illness' are too loose to serve as a reasonable test of whether a person is properly fit to plead or defend himself in a criminal proceeding. For this purpose, whatever may be the technical classification of his mental state, legally or

medically, the test is whether he has substantial capacity to comprehend the nature and consequences of the proceeding pending against him and to participate rationally in his defense. Cf. 14 Am.Jur. 802 (Criminal Law, § 45). It is not necessary that this determination be made by a jury."

In *Mishler v. Commonwealth*, Ky., 556 S.W.2d 676 (1977), we denied error on the part of the trial court in refusing to conduct an evidentiary hearing on the defendant's competency to stand trial.

In *Huff v. Commonwealth*, Ky., 560 S.W.2d 544 (1977), we said:

"Being diagnosed as schizophrenic some 15 years before the trial, with no intervening action or conduct of irregularity, is not such reasonable grounds that would put a trial judge on notice that appellant was not competent to stand trial."

When this court recognized that a defendant could waive his constitutional right to be represented by counsel and act as his own advocate, it must have realized that the procedures of a layman and some of his expressions would not meet accepted professional standards. The courts are concerned with the paramount question that a defendant receive a fair and impartial trial. In the case at bar, the record delineates that the conduct of the appellant in the handling of his case was not so bizarre as to put the trial court on notice of any mental deficiency. As a matter of fact, the trial judge wrote, " * * * the defendant very ably and intelligently handled his own case, and from his action it was certainly no evidence of him being insane."

Appellant's counsel directs our attention and makes much to do over the fact that the appellant labors under the belief that this prosecution was in effect a persecution and a perverted vendetta against him by Milford Jobe, Chief of Police of Fulton, Kentucky. This argument is not supported by any evidence of quality. However, the record is not void of acts and conditions that could indicate to a defendant with a persecution complex that such was the case. In this case, whether appellant's belief was right or wrong, it was pursued in his interrogation of the witnesses. Whether this worked to his advantage was only a calculated risk which appellant took. Many lawyers of ability, during the course of a trial, take calculated risks, sometimes to their advantage and sometimes to their disadvantage.

The trial court did not err in failing to conduct an evidentiary hearing to determine appellant's competency to stand trial. The court witnessed the action and conduct of the appellant, from which he determined that such a hearing was not necessary.

"III. The Sentence Imposed Against Appellant must be Vacated Because he was not Represented by Counsel at the Sentencing Hearing."

■ Since we have held that the appellant represented himself in this action, his argument that he was not represented by counsel at the sentencing proceeding fails. The appellant was present and represented himself on this occasion.

The judgment is affirmed.

CLAYTON, JONES and STEPHENSON, JJ., concur.

LUKOWSKY, J., files a dissent, in which PALMORE, C. J., and REED, J., join.

LUKOWSKY, Justice, dissenting.

The record establishes that the trial judge was made aware of the following facts either before or during trial.

1. Dunn was arrested at Western State Mental Hospital while attempting to obtain medication.

2. Dunn had been diagnosed a psychotic, schizophrenic, paranoid type, chronic, permanent as early as 1939.

3. On a number of occasions Dunn had been adjudged to be legally and psychiatrically insane.

4. Dunn was receiving social security benefits as a result of his mental illness.

5. Dunn maintained he was being fraudulently persecuted in "kangaroo" courts as a result of a conspiracy involving the chief

of police, the federal government and others.

6. Dunn was taking medication and claimed he did not know where he was half the time.

7. Dunn stated he functioned very badly when his "cycle . . . hits" and experienced intermittent prolonged amnesia.

8. Dunn asserted box cars talked to him both informatively and sensibly.

In *Via v. Commonwealth*, Ky., 522 S.W.2d 848 (1975) we held that a hearing is required sua sponte whenever the record reflects reasonable grounds to believe the defendant is not mentally competent to stand trial. The appellate review of a failure to provide a hearing on competence to stand trial is comprehensive. It is not limited by either the abuse of discretion or clearly erroneous standard. The question to be answered by the appellate court is whether a reasonable judge, situated as was the trial judge whose failure to conduct an evidentiary hearing is being reviewed, should have experienced doubt with respect to the defendant's competency to stand trial. *DeKaplany v. Enomoto*, C.A.9th, 540 F.2d 975, 983 (1976).

That my colleagues are able to ignore the enumerated facts and answer this question in the negative astonishes me. I think an affirmative answer is not only indicated but compelled. Albeit that the record may reflect facts tending to establish Dunn's mental competency and that they might warrant such a finding, the necessity of a hearing is not eliminated. *Via*, supra at 850. The distasteful answer may not be avoided by the application of the convenient rationalization that Dunn was crazy like a fox.

The odor of the case is further fouled by another unfortunate development. The trial court appointed counsel for Dunn. He requested that this appointment be vacated and that other counsel be appointed for him because the original appointee was eighty-six years of age, hard of hearing and had recently represented his former wife in their divorce case. The trial court denied the request.

When the case was called for trial Dunn announced that he was rejecting his appointed counsel and would represent himself. The trial court acquiesced in this action by directing counsel to sit at Dunn's table and give him such advice as he desired. The trial court did not conduct a hearing to determine Dunn's mental competency to waive counsel or warn him of the dangers and disadvantages of self representation. Dunn proceeded to try his case.

*Westbrook v. Arizona*, 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (1966), stands for the proposition that when the mental competency of a defendant becomes suspect he is entitled to a separate hearing, independent of the issue of competency to stand trial, on his competency to waive his constitutional right to representation by counsel and conduct his own defense. *State v. Westbrook*, 90 Ariz. 30, 406 P.2d 388 (1965), reversed, 101 Ariz. 206, 417 P.2d 530 (1966); *United States ex rel. Martinez v. Thomas*, C.A.2d, 526 F.2d 750, 754 (1975). *Faretta v. California*, 422 U.S. 802, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) requires that before a defendant is allowed to proceed pro se he be made aware of the dangers and disadvantages of self representation, so that the record will establish that he knows what he is doing and that his choice is made with his eyes wide open. Neither constitutional requirement was met here. This renders the conviction as hollow as termite-infested wood. *State v. Bauer*, Minn., 245 N.W.2d 848, 858–860 (1976).

I would reverse the judgment and remand the case to the trial court for further proceedings consistent with *Hayden v. Commonwealth*, Ky., 563 S.W.2d 720, 723 (1978) and *State v. Westbrook*, 101 Ariz. 206, 417 P.2d 530 (1966).

I am authorized to state that PALMORE, C. J., and REED, J., join in this dissent.