In the Matter of: BASIL RAY LEGG, JR., Applicant to the February 1987 North Carolina Bar Examination

No. 489A93

(Filed 9 September 1994)

**1. Attorneys at Law § 2 (NCI4th)— Bar applicant—current moral character—consideration of past behavior**

　　The past behavior of a Bar applicant may be considered by the Board of Law Examiners in determining the applicant's current moral character.

**IN RE LEGG**

[337 N.C. 628 (1994)]

**Am Jur 2d, Attorneys at Law §§ 12, 15.**

2. **Attorneys at Law § 2 (NCI4th)— Bar applicant—new hearing—notice of consideration of past application**

A Bar applicant was given sufficient notice that the Board of Law Examiners would consider not only his "current" moral character but also his 1986 application containing certain omissions in a hearing on the applicant's petition for reconsideration of his application based on newly discovered evidence, although a letter from the Board to the applicant stated that its inquiry would "necessarily focus on the current status of [his] character and fitness" and that a new application would be required, where the Board's letter also stated that the applicant was required to "be of good moral character both at the time of standing the written bar examination and at the time a license to practice law is issued," and the applicant was allowed to take the February 1987 examination; a notice to the applicant stated that the Board would inquire into his "rehabilitation since entry of the Board's order on June 16, 1988" and listed specific events which would be considered at the hearing, including the applicant's representation of a client which was considered at a May 1987 hearing; the notice also stated that all matters that were before the Board at two prior hearings would be considered, and that the manner in which the applicant closed his West Virginia law practice would be examined; and the applicant responded affirmatively when asked during the hearing whether he understood that all matters before the Board at his 15 May 1987 and 10 June 1988 hearings would still be in evidence before the Board.

**Am Jur 2d, Attorneys at Law §§ 15, 20.**

**Procedural due process requirements in proceedings involving applications for admission to bar. 2 ALR3d 1266.**

3. **Attorneys at Law § 2 (NCI4th)— Bar applicant—findings of misconduct—supporting evidence**

Substantial evidence before the Board of Law Examiners supported the Board's findings that a Bar applicant (1) converted to his own use funds received from the State of West Virginia that he owed to an investigator for services rendered in two indigent defendant criminal cases; (2) attempted to conceal from the executor of his mother-in-law's estate the existence of a $10,000

**IN RE LEGG**

[337 N.C. 628 (1994)]

loan which had been made to him by his mother-in-law; and (3) neglected to return legal papers to a client after a written request for such papers.

**Am Jur 2d, Attorneys at Law § 15.**

**Falsehoods, misrepresentations, impersonations, and other irresponsible conduct as bearing on requisite good moral character for admission to bar. 30 ALR4th 1020.**

4. **Attorneys at Law § 2 (NCI4th)— Bar applicant—notice of protest rule not violated—confrontation of witness—due process**

The Board of Law Examiners did not violate the rule requiring that Bar applicants be notified of protests to their application because a witness had *ex parte* communications with the Board about the applicant's attempt to conceal a loan made to him by his mother-in-law prior to her death and testified at hearings about the loan, since the communications and testimony did not constitute a protest as defined by the rules. Furthermore, defendant's right to due process was not violated by the witness's testimony where, prior to the hearings, the applicant was given notice of the matters to be discussed, including his indebtedness to his mother-in-law's estate for which the witness was the executor; the loan was discussed at the hearings and the applicant was given the opportunity to respond personally in support of his position; and the applicant was able to confront and cross-examine the witness at the last hearing.

**Am Jur 2d, Attorneys at Law § 20.**

**Procedural due process requirements in proceedings involving applications for admission to bar. 2 ALR3d 1266.**

Justice Webb concurs.

Justice Mitchell joins in this concurring opinion.

On appeal as of right pursuant to § .1405 of the Rules Governing Admission to the Practice of Law in the State of North Carolina from an order of Weeks, J., entered 1 July 1993, in Superior Court, Wake County, which affirmed the 13 December 1991 order of the Board of Law Examiners denying the applicant's application for admission to the 1987 North Carolina Bar Examination. Pursuant to Rule 30(f) of the Rules of Appellate Procedure, no oral arguments were heard before the Supreme Court.

## IN RE LEGG

[337 N.C. 628 (1994)]

*Basil Ray Legg, Jr., pro se, for applicant-appellant.*

*Michael F. Easley, Attorney General, by John F. Maddrey, Assistant Attorney General, for the Board of Law Examiners of the State of North Carolina, respondent-appellee.*

FRYE, Justice.

In this appeal we review, for the second time, the denial of appellant's application for admission to the practice of law in North Carolina. Because we conclude that the Board of Law Examiners [hereinafter the Board] properly considered the application and there was substantial evidence to support the findings and conclusions of the Board, we affirm the superior court which affirmed the order of the Board.

The Board permitted Basil Ray Legg, Jr., applicant, to take the February 1987 North Carolina Bar Examination and ordered the results sealed pending determination of his fitness to practice law. On 30 July 1987, the Board issued an order affirming the order of a two-member hearing panel dated 17 April 1987 which denied Legg's application to stand the 1987 Bar Examination. After the Board denied his request to reopen or reconsider the case based on newly discovered evidence, applicant appealed to the Superior Court, Wake County, pursuant to §§ .1401 and .1404 of the Rules Governing Admission to the Practice of Law in the State of North Carolina [hereinafter the Rules]. On 24 March 1988, Superior Court Judge D. Marsh McLelland entered an order remanding the case to the Board with instructions to make more specific findings and conclusions.

On remand, the Board made specific findings and conclusions and issued its second order, dated 16 June 1988, which again denied the application. Applicant appealed the Board's order to the Superior Court, Wake County, and Judge Coy E. Brewer entered an order affirming the Board's decision. Pursuant to § .1405 of the Rules, applicant appealed to this Court and we affirmed the superior court. *In re Legg*, 325 N.C. 658, 386 S.E.2d 174 (1989) *(Legg I)*, *cert. denied*, 496 U.S. 906, 110 L. Ed. 2d 270 (1990).

On 8 November 1990, the Board granted applicant's petition to reopen or reconsider his application pursuant to § .1207 of the Rules. A hearing was held on 16 October 1991 to consider newly discovered evidence. After considering new evidence presented by both the applicant and the Board, the Board found that applicant had "failed to present any newly discovered, persuasive evidence that the findings

and conclusions in [the] previous Order of June 16, 1988, were erroneous or incorrect" and again denied his application. The Board's third order was entered 13 December 1991.

Applicant appealed the 13 December 1991 order to the Superior Court, Wake County, and Judge Gregory A. Weeks entered an order affirming the Board's decision. Applicant appeals Judge Weeks' order to this Court, asserting three assignments of error. For the reasons stated herein, we affirm the order of the superior court.

The Board's 16 June 1988 order denying applicant's request to stand the 1987 Bar Examination was reviewed by this Court in *In re Legg*, 325 N.C. 658, 386 S.E.2d 174. In the 16 June 1988 order, the Board made several findings of fact including, in part: that applicant had failed to list, in response to questions in the application for the bar examination, certain past residences, a past employer, and certain debts over $200; that applicant amended his application after being notified by the Board that it wished to question him about the omissions at a panel hearing; and that applicant failed to disclose a lawsuit which had been filed against him. The Board found that these events "[were] not merely inadvertent error[s]; instead, [they] evidenced a lack of fairness and candor in dealing with the Board."

The Board also found that applicant, who was a practicing attorney in West Virginia, was appointed to represent two indigent defendants in criminal cases and that applicant received payment for his services and reimbursement for expenses from the State of West Virginia. The Board found that applicant failed to pay Tom Moses, an investigator hired by the applicant, for his work on the two cases from the reimbursement money, and that this failure to pay constituted a willful conversion of the funds owed to Moses. The Board made further findings that applicant had failed to tender a client's (Linda White) legal papers to her upon written request and that applicant had attempted to conceal from the executor of his mother-in-law's estate the fact that a $10,000 loan had been made to him by his mother-in-law prior to her death.

Following our affirmance of Judge Brewer's order which affirmed the Board's 16 June 1988 order, applicant's petition to reopen the case was granted by the Board. Pursuant to notice, a new hearing was held on 16 October 1991 at which both applicant and the Board presented additional evidence. Four witnesses testified, including applicant. After considering the evidence from the hearing, the Board, on 13

December 1991, issued its third order denying applicant's request to stand the February 1987 Bar Examination.

In the 13 December 1991 order, the Board repeated its findings from the 16 June 1988 order to the effect that applicant had omitted certain information from his application for the bar examination. The Board made other findings of fact consistent with its prior order which are, in pertinent part, as follows: that applicant attempted to conceal from the executor of his mother-in-law's estate the existence of a $10,000 loan made to him; that applicant willfully converted funds owed to Tom Moses, an investigator hired by applicant; and that applicant failed to return legal papers upon the request of his client. The Board concluded that applicant had purposefully and willfully failed to disclose matters which had a significant bearing upon his character and fitness. The Board further concluded that

> the applicant has failed to satisfy the Board that he possesses the qualifications of character and general fitness requisite for an attorney and counselor at law and that he is of such good moral character as to be entitled to the high regard and confidence of the public.

Additional facts will be discussed as they become necessary for a proper understanding of the issues involved.

[1] In his first assignment of error, applicant argues that the Board is required to inquire only into his "current" good moral character in reaching its decision. Additionally, applicant argues that the Board intentionally misled him to believe that it would focus only on the "current" status of his moral character and he relied on this misrepresentation. Applicant contends that because of his reliance on the representations of the Board, the Board should have reviewed his new application *de novo*, without considering the numerous omissions in his 1986 application.

Applicant argues that:

> In other jurisdictions which have addressed this issue, the Courts are unanimously in support of the proposition that the appropriate standard for review of the general fitness and good moral character of a Bar applicant is one concurrent with the date of the Applicant's <u>admission to the Bar</u>.

However, two of the cases cited by applicant involved an initial denial of an applicant's admission to the bar by the respective Boards and

**IN RE LEGG**

[337 N.C. 628 (1994)]

not, as in this case, a denial based on a hearing from a petition to reopen a prior Board decision. *Application of Davis*, 38 Ohio St. 2d 273, 313 N.E.2d 363 (1974); *Florida Bd. of Law Examiners Re: L.K.D.*, 397 So. 2d 673 (Sup. Ct. Fla. 1981). In the third case cited by applicant, the Supreme Court of Arizona stated that a prior incident of improper fee splitting with an attorney "standing alone . . . could not now be sufficient to show a present lack of good moral character." *Application of Guberman*, 90 Ariz. 27, 30, 363 P.2d 617, 618 (1961). The court stated that the question was "[w]hat does the record show about the intervening period of ten years which, *when considered in conjunction with his prior conduct*, shows either a present presence or absence of good moral character?" *Id.* at 30, 363 P.2d at 619 (emphasis added). Therefore, the court did not reject consideration of prior conduct in determining current moral character.

Applicant contends that the issue of whether the Board is bound to consider only applicant's current character is one of first impression for this Court. Although we have not specifically addressed this issue, in a prior opinion this Court stated that "[w]hether a person is of good moral character is seldom subject to proof by reference to one or two incidents." *In re Rogers*, 297 N.C. 48, 58, 253 S.E.2d 912, 918 (1979). "Character thus encompasses . . . a person's past behavior . . . ." *Id.* Therefore, in making a proper determination regarding an individual's current moral character, the past behavior of that individual is an appropriate inquiry. To disallow consideration of past behavior would limit the Board's discretion and hinder the effectiveness of a system which exists to ensure the integrity of the legal profession and to protect the public at large. *In re Legg*, 325 N.C. at 673, 386 S.E.2d at 182. We disagree with applicant's argument that the Board's inquiry must be limited to his "current" moral character without consideration of his past behavior.

[2] Applicant further argues that the Board misled him to believe that only his "current" moral character would be considered. Applicant presented a letter addressed to him and dated 24 April 1991 in which the Board stated that its inquiry would "necessarily focus on the current status of [his] character and fitness," and that a new application would be required. Applicant contends that this letter "expressly and unequivocally informed [him] that he would be <u>required</u> to submit a new application in order to initiate a <u>de novo</u> hearing regarding [his] <u>current status</u>." Applicant further contends that when the Board indicated in this same letter that it would "undertake a current investigation into [his] character and fitness," it again implied that the inquiry

**IN RE LEGG**

[337 N.C. 628 (1994)]

would focus only on his "current" character. Based on these representations by the Board, applicant argues that only the new application should have been considered by the Board in making its assessment of his character and not the 1986 application containing the omissions.

However, in the 24 April 1991 letter to applicant, the Board also stated that "§ .0501(1) of the Rules requires that an applicant be of good moral character both at the time of standing the written bar examination and at the time a license to practice law is issued." Since applicant was allowed to take the bar examination in February 1987, this statement was sufficient notice to him that anything relating to his character at that time would be considered by the Board, including the 1986 application.

The record also reveals a notice addressed to applicant and dated 27 September 1991 in which the Board indicated that it would inquire into his "rehabilitation since entry of the Board's order on June 16, 1988" and listed specific events which would be considered at the hearing, including: applicant's indebtedness to Moses, the ten thousand dollar cashiers check which was received by applicant from his mother-in-law, and applicant's representation of Linda White that "was *the subject of inquiry at the May, 1987 hearing*" (emphasis added). The Board also stated in the notice that "all of the matters that were before the Board on your hearings on May 15, 1987 and June 10, 1988 will be considered by the Board." Further, the Board indicated that the "manner in which [applicant] closed [his] law practice in West Virginia" would be examined. Of additional importance is the fact that during the hearing applicant was specifically asked whether he understood that "all matters . . . before the Board at your hearings of May 15, 1987 and June 10, 1988, would still be in evidence before [the] Board." Applicant replied "yes" to this question, contrary to his assertion on appeal that he understood that his 1986 application would not be considered.

Based on the foregoing, we conclude that the Board properly considered the 1986 application in making its findings and conclusions and did not mislead applicant to believe that the 1986 application would not be considered. This assignment of error is rejected.

[3] In his second assignment of error, applicant argues that the Board erred in finding that he had committed certain acts of misconduct in 1986 and that those acts reasonably reflected on his moral character and general fitness in 1991. Specifically, applicant contends that the

Board erred in finding: (1) that he converted to his own use funds received from the State of West Virginia that he owed an investigator, Tom Moses, for services Moses provided; (2) that he attempted to conceal from the executor of his mother-in-law's estate the existence of a $10,000 loan which had been made to him by his mother-in-law; and (3) that he neglected to return legal papers to a client after a written request for such papers.

Applicant argues that in light of new evidence submitted at the 16 October 1991 hearing, the findings by the Board were erroneous and not supported by substantial evidence. The new evidence which was presented included an affidavit from Patti Brown, applicant's former secretary, regarding the Moses matter; a letter from Tom Moses (now deceased) stating that he fully supported applicant's admission to the Bar and had been fully paid for services rendered; and testimony by the applicant, his wife, Randall Veneri (applicant's brother-in-law and the executor of Mrs. Veneri's estate), and Fred Parker (Executive Secretary of the North Carolina Board of Law Examiners) regarding the $10,000 loan from applicant's mother-in-law.

In considering applicant's prior appeal to this Court, we took note of the appropriate standard of review.

> This Court employs the whole record test when reviewing decisions of the Board of Law Examiners. Under this test, there must be substantial evidence that supports the Board's findings of fact and conclusions of law. Substantial evidence means that relevant evidence which a reasonable mind could accept as adequate to support a conclusion. *In re Moore*, 308 N.C. 771, 779, 303 S.E.2d 810, 815-816 (1983). Under the 'whole record' test we must review all the evidence, that which supports as well as that which detracts from the Board's findings, and determine whether a reasonable mind, not necessarily our own, could reach the same conclusions and make the same findings as did the Board." *Id.* at 779, 303 S.E.2d at 816. The initial burden of showing good character rests with the applicant. "If the Board relies on specific acts of misconduct to rebut this *prima facie* showing, and such acts are denied by the applicant, then the Board must establish the specific acts by the greater weight of the evidence." *In re Elkins*, 308 N.C. 317, 321, 302 S.E.2d 215, 217, *cert. denied*, 464 U.S. 995, 78 L. Ed. 2d 685 (1983).

*In re Legg*, 325 N.C. at 669, 384 S.E.2d at 180.

**IN RE LEGG**

[337 N.C. 628 (1994)]

The first finding of fact by the Board which applicant contends was not supported by substantial evidence is that he converted funds owed to Moses. Applicant presented an affidavit from his former secretary, Patti Brown, in which she stated that "unknown to Mr. Legg, [she] had not included in the check to Tom Moses, payment for two cases, in which [she] had invariably overlooked when writing the check." Applicant admits that the amount due to Moses was not immediately paid out of his reimbursement from the State of West Virginia, but argues his only error was that he had "mistakenly (but in good faith) believed that he had pre-paid Mr. Moses."

We found in *Legg I* that "there is uncontroverted evidence in the record before us to support the Board's finding that Legg willfully converted funds owed investigator Moses." *In re Legg*, 325 N.C. at 669, 386 S.E.2d at 180. In his testimony at the initial hearing in 1987, applicant argued that he did not pay Moses because the reimbursement check "did not call to [his] attention" the fact that the money was owed. Therefore, the question of applicant's knowledge of the outstanding bill was clearly before the Board in its earlier consideration of the application when it concluded conversion had occurred. Brown's affidavit is merely additional support for applicant's contention that his failure to pay Moses was inadvertent and does not alter the fact that there is substantial evidence supporting the Board's finding of conversion.

Additionally, applicant argues that there was no conversion because Moses' funds were never spent by applicant, but remained in applicant's bank account until paid to Moses. The record shows, however, that Moses was ultimately paid in three separate installments instead of one lump sum, implying that at least a portion of the money had in fact been spent. Further, conversion is the "unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *In re Legg*, 325 N.C. at 669, 386 S.E.2d at 180 (citation omitted). By depositing the check into his personal account in Raleigh, applicant exercised his right of ownership over the funds owed to Moses, thus satisfying the definition of conversion, even without evidence that he actually spent the money. Therefore, we hold that there was substantial evidence to support the Board's finding of fact that applicant converted the funds owed to Moses.

The second finding of fact that applicant contends was not supported by substantial evidence is that he attempted to conceal from

the executor of his mother-in-law's (Mrs. Veneri) estate the fact that a $10,000.00 loan had been made to him. Testimony regarding the loan constituted the majority of the new evidence presented at the 16 October 1991 hearing. After Mrs. Veneri's death on 9 September 1986, her son Randall Veneri (Randall), the executor of the estate, discovered evidence of a $10,000 cashiers check dated 5 September 1986, four days prior to Mrs. Veneri's death. Bank personnel confirmed that the check had been deposited into an account under applicant's name. The evidence showed that Mrs. Veneri had loaned the money for a down payment on applicant's new home. Applicant argues that "he cannot be found morally deficient for failing to disclose to his wife's relatives his (and his wife's) private financial dealings with her mother." Applicant further contends that when questioned directly by Randall, he admitted receiving the loan.

At the 16 October 1991 hearing, Randall testified that

[he] asked all members of [his] family, and specifically [he] asked Mr. Legg and his wife, because they were residing in [his] mother's home . . . if they had any knowledge about . . . [the $10,000 cashiers check,] and every member of the family, including Mr. Legg and his wife denied any knowledge of this check.

Randall further testified that he later discovered from the bank that the check had been deposited into an account under applicant's name. Randall next testified that he called applicant to confront him with this information, and at that point, applicant admitted receiving the money.

Applicant argues that the Board's earlier finding that he attempted to conceal the existence of the loan from the "executor of the estate" 'was incorrect because no conversation regarding the money had taken place while Randall was acting as the executor of the estate. Applicant contends that the Board, realizing that it had made a mistake in its earlier order, corrected itself in finding in its 13 December 1991 order that applicant attempted to conceal the existence of a $10,000 loan "from other members of the Veneri family." Applicant further alleges that if a conversation with Randall took place, it occurred before Randall was appointed executor, which contradicts the finding by the Board in the 16 June 1988 order. At the hearing Randall was unable to specifically state on what day his conversation with applicant took place.

Applicant concedes that "the Board may accept or reject in whole or in part the testimony of any witness." There was sufficient evi-

dence before the Board when it issued the 16 June 1988 order from which it could have found that even if the conversation had taken place before Randall was appointed executor, applicant continued to fail to disclose the existence of the loan after Randall qualified as executor. After carefully reviewing the evidence from both hearings, we are convinced that there is substantial evidence to support the Board's findings that applicant attempted to conceal the existence of the loan from Randall as executor and from other members of the Veneri family.

The third finding of fact which applicant contends was not supported by substantial evidence is that his failure to return legal papers to a client upon her written request was evidence of neglect. At the hearing, the Board submitted a letter written by applicant's client dated 10 June 1986 requesting the return of her legal papers since she had terminated applicant's representation. The client's materials were not completely returned until 28 April 1987, which was after the Board had notified the applicant that this matter would be investigated.

Applicant relies on *Capehart v. Church*, 136 W. Va. 929, 69 S.E.2d 127 (1952), for the proposition that an attorney may have a retaining lien over a client's documents until a general balance due the attorney is paid. *Id.* However, at the 16 October 1991 hearing, applicant never asserted that he was holding the papers in lieu of payment, but rather stated that he "discovered pursuant to the hearing before [the] board that when [he] opened Miss White's file [he] had neglected to send her all her papers." Therefore, there was no evidence that applicant was, in fact, withholding the documents in lieu of payment. We conclude that there was substantial evidence upon which the Board could find that applicant did in fact act with carelessness and neglect with regard to the return of his client's legal papers.

Upon a proper review of the whole record, we conclude that there is substantial evidence to support each of the Board's findings discussed on appeal, and the second assignment of error is therefore rejected.

[4] In his final assignment of error, applicant argues that the Board erred by violating § .0803 of the Rules which requires that applicants be notified of protests to their application. Applicant contends that Randall Veneri protested his 1987 application through *ex parte* communications with the Board, and his 1991 application through testimony at the 16 October 1991 hearing. These communications and

testimony do not constitute a protest as defined by the rules. *See Rules Governing Admission to the Practice of Law in the State of North Carolina* § .0802 (1988).

We note that the Board is free "to make or cause to be made such examinations and investigations as may be deemed necessary," and therefore, it was not improper for the Board to question Randall before the 1987 hearing in the course of its investigation without first notifying applicant. N.C.G.S. § 84-24 (1985). We find no evidence that Randall was acting in any capacity other than that of a witness for the Board regarding the matter of the loan. Further, Randall's adverse testimony at the hearing regarding the events surrounding the loan does not itself constitute a protest.

Citing *Willner v. Committee on Character & Fitness*, 373 U.S. 96, 10 L. Ed. 2d 224 (1963), applicant contends that he must be afforded an opportunity to be confronted with, and cross-examine, witnesses who are adverse to him. However, *Willner* dealt with the denial of an applicant's admission to the Bar without the applicant having an opportunity to be heard prior to the adverse decision. *Id.* at 106, 10 L. Ed. 2d at 231. Justice Goldberg, in his concurrence, with Justices Brennan and Stewart joining, stated: "As I understand the opinion of the Court, this does not mean that in every case confrontation and cross-examination are automatically required . . . . The circumstances will determine the necessary limits and incidents implicit in the concept of a 'fair' hearing." *Id.* at 107, 10 L. Ed. 2d at 232 (Goldberg, J., concurring).

In this case, prior to the hearings, applicant was given notice of the matters to be discussed, including his indebtedness to the estate of his mother-in-law for which Randall was the executor. At the hearings, the matter of the loan was in fact discussed and applicant was afforded an opportunity to respond personally in support of his position. More specifically, at the 16 October 1991 hearing, applicant was able to confront and cross-examine Randall. Therefore, we hold that the Board did not violate the Rules or applicant's due process rights, and this assignment of error is rejected.

Upon examination of the whole record, we conclude that applicant has been afforded a careful consideration of his application and that there was substantial evidence to support the Board's findings and conclusions. Accordingly, the order of the Wake County Superior Court, which affirmed the 13 December 1991 order of the Board of

Law Examiners denying applicant's application for admission to the 1987 North Carolina Bar Examination, is affirmed.

AFFIRMED.

Justice WEBB concurring.

I continue to believe, as I stated in a dissenting opinion in the first appeal of this case, *In re Legg*, 325 N.C. 658, 386 S.E.2d 174 (1989), that it was error for the Board of Law Examiners to deny the appellant the right to take the 1987 bar examination. However, our decision in that appeal is now the law for this case. I agree with the majority that there was nothing in the most recent hearing which would require the Board to change its order. For that reason, I concur in the result reached by the majority.

Justice MITCHELL joins in the concurring opinion.