IN THE MATTER OF: JERRY BANKS MOORE, APPLICANT TO THE 1978 BAR EX-AMINATION

No. 40A83

(Filed 7 July 1983)

1. **Attorneys at Law § 2— Board of Law Examiners—quorum of members—sufficiency of evidence**

   A letter sent by counsel for the Board of Law Examiners asserting that a quorum was present and offering to provide affidavits of sworn testimony before the trial judge was sufficient to establish that a quorum of the Board was present and participating when a decision was made on appellant's case.

2. **Attorneys at Law § 2— evidence of quorum of Board members—unanimous vote**

   Where six members of the eleven members of the Board of Law Examiners participated in a decision of 30 June 1982 concerning appellant and were also present when testimony was heard concerning appellant in July of 1978 and in August of 1981, and where the decisions of August 1981 and June 1982 were taken upon a unanimous vote, any action by the Board was proper.

3. **Attorneys at Law § 2— findings of Board supported by substantial evidence**

   There was substantial competent evidence to support the Board of Law Examiners' findings that: (1) appellant threatened to kill a man named Barney Adler in 1966; (2) appellant made belligerent statements to the secretary of a man with whom his wife was having a dispute; (3) appellant lied under oath while testifying before the Board and (4) appellant purposefully omitted a conviction for assault on a female from his application and registration forms in an attempt to mislead the Board. These findings in turn constituted a reasonable basis from which the Board could determine that appellant had not been completely rehabilitated and that he did not possess the moral character necessary to stand for the 1978 Bar Examination.

ON appeal pursuant to Section .1405 of the Rules Governing Admission To The Practice of Law from the judgment of *Hobgood, R. H., J.*, entered 28 September 1982 in Superior Court, WAKE County, which affirmed the 30 June 1982 decision of the Board of Law Examiners of the State of North Carolina denying the applicant's request to stand for the 1978 bar examination.

On 27 December 1978 the Board of Law Examiners determined that the applicant, Jerry Banks Moore, failed to establish that he was of good moral character and as a result denied his application to stand for the 1978 bar examination and ordered that the results of the examination which he took be permanently sealed. This determination by the Board was affirmed by the Superior Court, Wake County on 5 February 1980. The applicant

then appealed the decision to this Court pursuant to Section .1405 of the Rules Governing Admission to Practice Law. In an opinion written by Justice Exum filed 6 January 1981 and reported at 301 N.C. 634, 272 S.E. 2d 826 (1981), we reversed the Board's final determination and remanded the cause to the Board for further proceedings. Specifically, we instructed that the Board make findings of fact concerning specific statements the Board found to have been falsely made by the applicant. In addition, we instructed that the Board make findings of fact as to whether the applicant in fact committed specific acts of misconduct and whether the applicant's failure to disclose a criminal conviction on either his registration or his application was purposeful or inadvertent. Such findings of fact are necessary in order for a reviewing court to determine the propriety of the Board's action.

On remand from this Court the Board received new evidence, made new findings of fact and decided on 21 August 1981 to deny Mr. Moore's application to stand for the 1978 bar examination. However, on 25 May 1982 Judge Battle, in Superior Court, Wake County, remanded the cause to the Board due to the Board's failure to fully comply with the directives of this Court set out in *In re Moore*, 301 N.C. 634, 272 S.E. 2d 826 (1981). On 30 June 1982 the Board withdrew its prior order dated 21 August 1981 and issued an amended decision which also denied Mr. Moore's application to stand for the 1978 bar examination. Judge Hobgood affirmed the Board's decision, as amended, on 28 September 1982 in Superior Court, Wake County.

The facts as set out by Justice Exum in *In re Moore*, 301 N.C. 634, 272 S.E. 2d 826 (1981) are as follows:

In 1963 Moore secured employment as a pharmaceutical representative and moved to Cary, North Carolina. He became a citizen of good standing in the community and was involved in a number of civic and church activities. In 1966, however, Moore and his wife began experiencing marital difficulties. On 20 July 1966 Moore discovered his wife with another man; and, after his wife brandished a handgun, struck her in the face. This incident led to Moore's subsequent trial and conviction for assault upon a female, whereupon he paid eleven dollars in court costs and a fifty dollar fine. Several weeks later, in mid-August, 1966, Moore and his wife separated. On 29 August 1966 Moore shot and killed a Mr. Barney Adler, Moore's estranged wife's paramour. Moore was tried for first degree murder in Wake Superior Court

and, despite his contention of self-defense, was convicted of second degree murder. Moore was incarcerated for over six years during which time he participated in work-release and college study-release programs. He graduated from the University of North Carolina at Charlotte (UNC-C) with honors in religion, and subsequently attended and graduated from South Texas Law School. Moore's parole was terminated unconditionally in 1975 and his rights of citizenship were restored at that time.

In response to a question asking for a listing of all arrests and convictions other than parking violations Moore failed to list his conviction for assault on a female either on his application or registration forms filed, respectively, on 5 January 1978 and 10 February 1978. He did ultimately disclose this incident by an amendment to his application filed 1 July 1978.

The central factual dispute in the record arises out of a conflict between Moore's testimony and that given by Mr. Sam Adler, father of Barney Adler, and Ms. Ira Myers, secretary to Dean William S. Mathis at UNC-C. Both Adler and Ms. Myers testified at the 18 October 1978 hearing. Mr. Adler testified that on or about 13 August 1966 Moore came to the Adler residence and warned Barney that "I don't want you to see my wife, if you do I'll kill you." Ms. Myers testified that Moore, in a conversation with her during the summer of 1970, made a statement to the effect that "My government took me into service, they taught me how to kill, and the more people I killed, the more medals and pay I received, but when I came home and did what my government taught me, they punished me." She further testified that during either the summer of 1973 or the summer of 1974 Moore made a statement to the effect that "I don't like to see anyone hurt the woman I love. I have already killed one man and I have paid for it; it did me no harm and I would not hesitate to kill another man who hurt the woman I love." Ms. Myers intimated that Moore's remark was in reference to Dean Mathis who was then involved in a tenure dispute with Moore's second wife. Applicant Moore repeatedly denied that he threatened to kill Barney Adler or that he made any such statements to Ms. Myers. The issue thus becomes whether

Moore did in fact make these belligerent statements or any of those attributed to him.

Another factual issue arose when Moore explained that he had not originally listed the assault on a female conviction because "it was a part of a chain of events which led up to the second degree murder of Mr. Barney Adler. . . . There's no desire on my part to hide anything from the bar. I'm quite aware that the bar has the power to check FBI records." This issue thus became whether Moore inadvertently omitted this incident because he had ceased to recall it as an incident separate and apart from the murder itself or whether the omission was willful and intended to mislead the Board.

In addition the Board of Law Examiners, on 21 May 1981, allowed Mr. Moore to introduce for consideration three items of written evidence: (a) A Pardon of Forgiveness signed by Governor James B. Hunt, Jr. on 19 October 1979; (b) four letters written by persons acquainted with the applicant; and (c) the applicant's transcript from the University of North Carolina at Charlotte where Mr. Moore graduated with honors.

In concluding that the applicant, Jerry Banks Moore, does not presently possess the good moral character necessary for admission to the Bar, the Board made the following findings of fact and conclusions in its amended decision filed 30 June 1982:

FINDINGS OF FACT

(1) In July, 1966, the applicant was convicted of assault and battery on a female in Durham County, North Carolina. The female was his then wife. (At that time the applicant was not aware of one Barney Adler.) This criminal conviction did not appear on the applicant's registration or application form filed with the Board on February 10, 1978 and January 5, 1978, respectively. This record of conviction was first disclosed to the Board by the applicant by amendment to his application filed with the Board on July 1, 1978, shortly before the Board's hearing on applicant's character fitness set for July 6, 1978, notice of such hearing having been given to the applicant on June 22, 1978.

(2) On or about August 13, 1966, the applicant told Barney Adler that if Adler ever saw applicant's wife again, he (the applicant) would kill him (Adler).

(3) On August 19, 1966, the applicant shot and killed Barney Adler.

(4) In 1966, the applicant was charged with murder in the first degree of Barney Adler and later convicted of murder in the second degree of Barney Adler in the Superior Court of Wake County, North Carolina. The applicant was duly sentenced to confinement in the prison system of the State and was paroled after serving a portion of the term to which he was sentenced. On October 19, 1979, the applicant was granted a Pardon of Forgiveness by Governor James B. Hunt, Jr.

(5) In a conversation with Mrs. Ira Myers in 1970, the applicant stated to Mrs. Myers in substance that ("My government took me into service; they taught me how to kill; and, the more people I killed the more medals and pay I received, but when I came home and did what my government taught me, they punished me)."

(6) In 1973 or 1974, the applicant stated to Mrs. Ira Myers that ("I don't like to see anyone hurt the woman I love. I have already killed one man and I have paid for it and it did me no harm. I would not hesitate to kill another man who hurt the woman I love)."

(7) In July 1978 the applicant testified under oath that (he (the applicant) did not threaten Barney Adler and did not tell Barney Adler that he (the applicant) would kill him). Such testimony was false and given with the deliberate intent to deceive and mislead the Board.

(8) In July 1978 the applicant testified under oath before the Board that he ((the applicant) did not tell Mrs. Ira Myers that "I don't like to see anyone hurt the woman I love. I have already killed one man and paid for it and it did me no harm. I would not hesitate to kill another man who hurt the woman I love,") and that if Mrs. Myers so testified, she was lying. Such testimony was false and given with the deliberate intent to deceive and mislead the Board.

(9) In July 1978 (the applicant testified under oath before the Board that he (the applicant) never made the statement to Mrs. Myers that "My government took me into service; they taught me how to kill; and, the more people I killed the more medals and pay I received, but when I came home and did what my government taught me, they punished me,") and that her statement to that effect was not true. Such testimony was false and given with the deliberate intent to deceive and mislead the Board.

(10) The applicant perjured himself before the Board in the three instances of false testimony specified in Findings of Fact (7), (8) and (9) above.

(11) (The Board finds that the applicant attempted to wilfully mislead the Board by failing to list on his application to the Board his conviction of assault and battery on a female (his wife),) because said crime was an offense separate and distinct from the murder of Barney Adler, and because a person trained in the law would not reasonably equate an assault on a female with a murder, regardless of the proximity in time of the offenses.

(12) The Board finds that the acts of misconduct occurring in 1966 (the murder and the assault), *by themselves*, do not continue to constitute evidence that the applicant is presently morally unfit to practice law.

(13) Because of the incidents of perjury specified in Findings of Fact (7), (8) and (9), the failure of the applicant to disclose the assault conviction as specified in Findings of Fact (1) and (11), and the applicant's belligerent statements specified in Findings of Fact (2), (5) and (6), the Board finds and concludes that the applicant has not been fully rehabilitated from the acts of misconduct occurring in 1966.

(14) The Board finds and concludes that the applicant is presently morally unfit to practice law because of the incidents of perjury specified in Findings of Fact (7), (8) and (9), the failure of the applicant to disclose the assault convictions as specified in Findings of Fact (1) and (11), and the applicant's belligerent statements specified in Findings of Fact (2), (5) and (6). The Board's findings of perjury on the

part of the applicant are given the greatest weight in this conclusion.

(15) The applicant does not presently possess the good moral character prerequisite for admission to the Bar.

Based on the foregoing Findings of Fact, the Board concludes as a matter of law that Jerry Banks Moore does not possess the qualifications of character and general fitness requisite for an attorney and counsellor at law, and is not of such good moral character as to be entitled to the high regard and confidence of the public, and therefore to take the 1978 North Carolina Bar Examination.

As a result of these findings of fact and conclusions the Board ordered that the application by Mr. Moore to stand for the 1978 bar examination be denied and that the results of the 1978 bar examination taken by the applicant be permanently sealed.

*Vaughan S. Winborne, for the applicant appellant.*

*Rufus L. Edmisten, Attorney General, by Assistant Attorney General, Harry H. Harkins, Jr., for the Board of Law Examiners, appellee.*

COPELAND, Justice.

[1] In his first argument the applicant, Mr. Moore, maintains that the decision of the Board of Law Examiners dated 30 June 1982 is in violation of established procedural rules. The basis of this contention is that there was not a quorum of the members present and participating when critical decisions concerning his cause were made. In the alternative Mr. Moore asserts that the record lacks sufficient evidence from which a determination can be made that the Board was meeting and acting with a quorum of its members present.

The record indicates that the Board decided to restrict review of the applicant's cause on remand from this Court to those members of the Board who were present when the testimony was heard in July of 1978. This decision was noted in the Board's order of 21 August 1981 but the applicant did not contest the decision until the action was pending in Superior Court, Wake County after the Board's decision of 30 June 1982. Although the

applicant argues that the record does not adequately show that a quorum of the Board was present when decisions critical to his cause were made, we hold that a letter sent by counsel for the Board asserting that a quorum was present and offering to provide affidavits of sworn testimony before Judge Hobgood is sufficient to establish that a quorum of the Board was present and participating when a decision was made on Mr. Moore's application.

[2]   The applicant contends that even if the record is sufficient to establish which members of the Board participated in the decision in his cause, those members of the Board which were present in July of 1978 at the original hearings do not constitute a quorum of the Board as it existed in June of 1982. The law in this State is that in the absence of a statutory rule to the contrary, a quorum is constituted when a majority of the membership is present. *Edwards v. Board of Education,* 235 N.C. 345, 70 S.E. 2d 170 (1952). The Board of Law Examiners is comprised of eleven members of the Bar elected by the council of the North Carolina State Bar. G.S. 84-24. Any six of the eleven members of the Board may constitute a quorum. In reviewing the record we find that there were six members of the Board who participated in the decision of 30 June 1982 who were also present when testimony was heard in July of 1978. In addition, those same six members were present in August of 1981 when the Board denied Mr. Moore's request to offer several letters of reference written during May of 1981. Each of these actions, the decision of 30 June 1982 and the decision of 21 August 1981, were taken upon the unanimous vote of six members of the Board. As a result these actions were proper.

However, the record indicates that at a meeting of the Board on 15 May 1981, while eight members were present, only four of those members participating in Mr. Moore's case were present. Clearly any action taken by these four members would not be an action of the Board since four is neither a quorum nor a majority of the membership. Although any action taken by the Board in Mr. Moore's case on 15 May 1981 was not an official decision of the Board, it is not prejudicial since all rulings made on 15 May 1981 were favorable to the applicant.

We hold that the Board's decision to restrict review of Mr. Moore's application to those members who heard the live testi-

mony was reasonable in light of the circumstances in this case where the credibility of the various witnesses was crucial to a fair determination. We also hold that a unanimous vote by six members of the eleven member Board constitutes an action by a quorum and a majority of the membership and any action by such a majority is proper.

[3] The applicant next attacks the Board's findings of fact and conclusions as not being supported by substantial evidence. Specifically the applicant asserts that there was not substantial evidence to support the Board's findings: (1) that he threatened to kill a man named Barney Adler in 1966; (2) that he made belligerent statements to the secretary of a man with whom his wife was having a dispute; (3) that he lied under oath while testifying before the Board and (4) that he purposefully omitted a conviction for assault on a female from his application and registration forms in an attempt to mislead the Board. In reviewing the applicant's challenges to the Board's findings and conclusions we employ the " 'whole record' test to determine if they are supported by substantial evidence." *In re Elkins,* --- N.C. ---, 302 S.E. 2d 215, 217 (1983): see also *In re Rogers,* 297 N.C. 48, 253 S.E. 2d 912 (1979). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. National Labor Relations Board,* 305 U.S. 197, 229, 83 L.Ed. 126, 140, 59 S.Ct. 206, 217 (1938); accord, *Commissioner of Insurance v. Automobile Rate Office,* 287 N.C. 192, 214 S.E. 2d 98 (1975). Under the "whole record" test we must review all the evidence, that which supports as well as that which detracts from the Board's findings, and determine whether a reasonable mind, not necessarily our own, could reach the same conclusions and make the same findings as did the Board. *In re Elkins,* --- N.C. ---, 302 S.E. 2d 215 (1983); *Thompson v. Board of Education,* 292 N.C. 406, 233 S.E. 2d 538 (1977). The whole record indicates that there is substantial evidence to support the Board's findings and conclusions.

The Board found that the applicant, Mr. Moore, threatened to kill Mr. Barney Adler on or about 13 August 1966. Aside from the fact that Mr. Moore killed Barney Adler on 29 August 1966, the Board heard testimony from the father of Barney Adler who stated under oath that he overheard Mr. Moore threaten the life

of his son because his son, Barney Adler, was having an affair with Mr. Moore's wife. The Board also found that Mr. Moore made belligerent statements to Ms. Ira Myers in 1970 and again in 1973 or 1974. Ms. Myers testified under oath before the Board that the applicant told her in 1970 "My government took me into service; they taught me how to kill; and, the more people I killed the more medals and pay I received, but when I came home and did what my government taught me, they punished me." She also testified that Mr. Moore told her in the summer of 1973 or 1974, while his wife was involved in a tenure dispute with Ms. Myers' boss, that, "I don't like to see anyone hurt the woman I love. I have already killed one man and I have paid for it and it did me no harm. *I would not hesitate to kill another man who hurt the woman I love.*"

The applicant, Mr. Moore, testified under oath that he did not make any of the statements sworn to by Mr. Adler or Ms. Myers. This created a factual dispute between the testimony of Mr. Moore and the testimony of Mr. Adler and Ms. Myers. "It is the function of the Board to resolve factual disputes." *In re Elkins*, --- N.C. ---, 302 S.E. 2d 215, 217 (1983); *In re Rogers*, 297 N.C. 48, 253 S.E. 2d 912 (1979). In the case *sub judice* the Board found that Mr. Moore made the threatening statements which Mr. Adler and Ms. Myers testified he had made. In reviewing the entire record and considering all evidence which detracts from the Board's findings we conclude that the sworn testimony of Mr. Adler and Ms. Myers constitutes "substantial evidence" and is sufficient to support the decision of the Board.

The Board also found that Mr. Moore perjured himself before the Board when he denied making the three statements testified to by Mr. Adler and Ms. Myers. The applicant contends that the Board did not have "substantial evidence" on which to base its finding that he lied under oath during his testimony to the Board in 1978. This finding by the Board is supported by the sworn testimony of Mr. Adler and Ms. Myers. In addition the Board, unlike a reviewing court, had the opportunity to observe each witness's demeanor during both direct and cross-examination. Although a different Board could have found contrary to the Board's finding that the applicant perjured himself, the Board's conclusion is reasonable under the evidence and therefore must

stand. *Thompson v. Board of Education,* 292 N.C. 406, 233 S.E. 2d 538 (1977).

The Board of Law Examiners also found that the applicant attempted to mislead the Board and its investigation by purposefully failing to disclose a criminal conviction of assault on a female. Once again the applicant maintains that there is no "substantial evidence" in the record to support the Board's finding. The record indicates that Mr. Moore failed to disclose his assault on a female conviction on two separate occasions. The first failure to disclose occurred when the applicant failed to make a notation of the conviction on his application to take the 1978 bar examination filed 5 January 1978. The second failure to disclose occurred when no notation concerning the conviction was made on his registration form filed 10 February 1978. Both the application form and the registration form specifically required the applicant to disclose separately each prior criminal conviction. In fact disclosure was not made until 1 July 1978 when Mr. Moore amended his application. The amendment was made five days before the Board's hearing on Mr. Moore's character and eight days after the applicant received notice of the hearing which suggested that his failure to disclose his prior conviction would be addressed at the hearing.

Mr. Moore did not contest the fact that he failed to disclose the assault on a female conviction. However, he did assert that the omission was a product of a faulty memory. He maintains that he was very busy at the time he filled out the application and registration and that because his murder conviction arose from an incident occurring one month after the assault on a female charge, his memory of the assault conviction was overshadowed. Mr. Moore was a law student at the time he filled out the application and registration forms. The murder and assault on a female convictions were completely separate in all respects and there was no legitimate reason why he would have been confused. Therefore, the Board had substantial evidence on which to base its decision that Mr. Moore purposely failed to disclose his conviction of assault on a female.

Finally the applicant asserts that there was not substantial evidence to support the Board's conclusion that he, Jerry Banks Moore, did not presently possess good moral character. The

Board stated that Mr. Moore's 1966 murder conviction was not determinative of his moral character in 1978. However, the Board was particularly interested in finding out whether Mr. Moore, a convicted murderer, had been sufficiently rehabilitated within the twelve year period between the murder and his application to take the 1978 Bar Examination. The Board found that applicant Moore made threatening and belligerent statements as late as 1973 or 1974. In addition, the Board found that he purposely omitted a criminal conviction from both his application form and registration form. The Board also found that Mr. Moore lied under oath during his testimony before the Board in 1978. These findings constitute a reasonable basis from which the Board could determine that applicant Moore had not been completely rehabilitated and that he did not possess the moral character necessary to stand for the 1978 Bar Examination. It shall be noted that the applicant's moral character to stand for any future Bar Examination is not determined by this opinion.

We, therefore, affirm the Order of the Superior Court, Wake County, which affirmed the Board of Law Examiners' decision of 30 June 1982 denying the applicant's request to stand for the 1978 Bar Examination.

Affirmed.