**IN RE BRAUN**

[352 N.C. 327 (2000)]

by the trial court, including the sentence of death for first-degree murder, must therefore be left undisturbed.

NO ERROR.

---

IN THE MATTER OF: NANCY E. BRAUN, APPLICANT TO THE NORTH CAROLINA BAR BY COMITY

No. 31A00

(Filed 13 July 2000)

**Attorneys— comity applicant—failure to actively and substantially engage in practice of law**

The Board of Law Examiners did not err in denying a comity applicant's admission to the Bar based on her failure to actively and substantially engage in the practice of law for at least four out of the last six years immediately preceding the filing of the application, and based on character and general fitness grounds, since petitioner's statements purporting to show a practice of law while owning and operating a restaurant during the five-year period from November 1991 to December 1996 lacked candor, because: (1) misrepresentations and evasive or misleading responses that could obstruct full investigation into moral character are inconsistent with the truthfulness and candor required of a practicing attorney; and (2) the whole record reveals that petitioner did not hold herself out as a practicing attorney from November 1991 to November 1996, did not maintain a separate law office, did not maintain professional malpractice insurance, did not attend formal continuing legal education classes, did not keep contemporaneous time or billing records, did not present affidavits from others for whom she claimed to have performed legal work while opening and operating a new restaurant business, and did not report on her tax returns the fair value of what she received in "barter" for her legal services.

Appeal of right pursuant to section .1405 of the Rules Governing Admission to Practice of Law in the State of North Carolina from an order of Farmer, J., signed 3 September 1999 in Superior Court, Wake County, affirming the 1 December 1997 order of the Board of Law Examiners denying the applicant's application for admission

to the North Carolina Bar by comity. Heard in the Supreme Court 15 May 2000.

*Harry H. Harkins, Jr., for petitioner-applicant-appellant.*

*Michael F. Easley, Attorney General, by Robert O. Crawford, III, Special Deputy Attorney General, for respondent-appellee North Carolina Board of Law Examiners.*

FREEMAN, Justice.

Petitioner Nancy E. Braun, a 1988 graduate of the State University of New York at Buffalo School of Law, was admitted to practice in the State of New York (4th Department) in 1989 and in the District of Columbia by reciprocity in 1991. On 5 December 1996, Braun applied for admission to the North Carolina Bar by comity. Braun appeared before a two-member panel of the North Carolina Board of Law Examiners (Board) on 15 July 1997. The panel ordered that her comity application be denied, and, thereafter, Braun requested a *de novo* hearing before the full Board. On 24 October 1997, she appeared before the full Board for the purpose of receiving evidence from which the Board could determine whether Braun had met all the requirements of section .0502 of the Rules Governing Admission to Practice of Law in North Carolina. Following this hearing, the Board, by order of 1 December 1997, denied the comity application concluding that Braun had failed to prove to its satisfaction that she met "all the requirements of section .0502 and especially Rule .0502(3)" (comity applicants must prove they are duly licensed to practice law in another state or territory of the United States and have been for at least four out of the last six years immediately preceding the filing of the application actively and substantially engaged in the practice of law in that jurisdiction). Additionally, the Board denied Braun's application on the grounds of character and general fitness. Braun then appealed the Board's determination to Superior Court, Wake County. On 3 September 1999, the trial court entered an order affirming the decision of the Board. Braun appeals to this Court only the Board's determination that she is unfit to be admitted to the Bar of the State of North Carolina, assigning as error the Board's findings of fact as too vague to permit judicial review and further contending that the trial court's ruling is erroneous as a matter of law.

Among the Board's lengthy findings are the following:

7. From September 1988 to October 1990, the Applicant was an associate attorney in the law firm of Moot & Sprague in Buffalo, New York.

8. From November 1990 to November 1991, the Applicant was an associate attorney in the law firm of Phillips, Lytle, Hitchcock, Blaine & Huber in Buffalo, New York.

9. In November 1991, the Applicant went into business for herself as a co-owner and operator of a restaurant business known as Harvest Moon Cafe & Catering in Buffalo, New York.

10. The Applicant operated Harvest Moon Cafe & Catering as a partnership, sole proprietorship, or corporation from November 1991 until November 1996.

11. In November 1996, the Applicant moved from Buffalo, New York, to Charlotte, North Carolina.

12. Section .0502(3) of the Rules Governing Admission to Practice Law in the State of North Carolina requires comity applicants to prove to the satisfaction of the Board that the applicant is duly licensed to practice law in another state, or territory of the United States, or the District of Columbia having comity with North Carolina, and that while so licensed therein, the applicant has been for at least *four out of the last six years* immediately preceding the filing of his application been [sic] *actively and substantially* engaged in the practice of law in that jurisdiction.

13. The six years immediately preceding the filing of the Applicant's Application were December 5, 1990, to December 5, 1996.

14. In addition to operating the restaurant, from November 1991 to November 1996 the Applicant performed certain law related activities for Harvest Moon Cafe & Catering, such as obtaining a business loan; negotiating a lease and resolving disputes with the landlord; attending an unemployment hearing; negotiating dissolution of the partnership; incorporating the business; obtaining an ABC license; negotiating a settlement with the telephone company; responding to Labor Board audit inquiries; and negotiating contracts.

15. The Applicant was not paid for her law related activities for Harvest Moon Cafe & Catering from November 1991 to November 1996.

16. During the period from November 1991 to November 1996, the Applicant performed miscellaneous legal services for various employees and vendors, such as drafting a consignment form agreement, appearing in traffic court, writing demand letters, and negotiating settlements of disputes.

17. The Applicant was paid "in kind" or did not charge for her various miscellaneous legal services for other persons from November 1991 to November 1996. These "in kind" payments were not reported as income on her federal income tax returns for those years.

18. The Applicant did not maintain a legal office separate and apart from her restaurant business from November 1991 to November 1996.

19. The Applicant did not advertise her legal services in the yellow pages or otherwise hold herself out to the general public as a practicing lawyer from November 1991 to November 1996.

20. The Applicant did not maintain professional malpractice insurance from November 1991 to November 1996.

21. The Applicant did not maintain contemporaneous records of billable hours for her law related activities for Harvest Moon Cafe & Catering or her miscellaneous legal services for other persons from November 1991 to November 1996.

22. The Applicant did not attend formal continuing legal education (CLE) from November 1991 to November 1996.

23. While the Applicant operated Harvest Moon Cafe & Catering between 1991 and November 1996 she was not engaged in the active and substantial practice of law.

. . . .

25. The Applicant's answers to questions attempting to show that her work at Harvest Moon Cafe & Catering was the active and substantial practice of law showed a lack of candor.

26. The Applicant's statements and answers to questions showed a lack of candor; was [sic] misleading to the Board; and have a significant bearing on her character and fitness.

27. The Applicant has failed to satisfy the Board that she possesses the qualifications of character and general fitness required

of an attorney and counselor of law and she is of such good moral character and is entitled to the high regard and confidence of the public.

Braun argues that the above findings of fact, in particular numbers 25 and 26, fail to identify which of her specific statements show a lack of candor or are misleading and that the findings are therefore too vague to permit judicial review. We disagree.

Braun contends that her case is precisely on point with our decision in *In re Moore*, 301 N.C. 634, 272 S.E.2d 826 (1981). Among its four findings of fact in that case, the Board stated in finding number three that "[o]n several occasions in [the applicant's] testimony before the Board, the applicant made false statements under oath on matters material to his fitness of character." *Id.* at 638, 272 S.E.2d at 829. This Court held that the finding "fails adequately to resolve this issue and lacks the requisite specificity to permit adequate judicial review of the Board's order." *Id.* at 640, 272 S.E.2d at 830.

Contrary to Braun's assertions, *Moore* can be differentiated from the present case in several ways. First, unlike the present case, the evidence in *Moore* was in conflict, and thus there was a need to resolve crucial facts before any meaningful judicial review could be made. *Id.* at 639-40, 272 S.E.2d at 829-30. In the instant case, Braun was the only witness. There is no conflicting evidence in either the record or the transcript. Second, the Board in *Moore* made only four findings of fact, whereas in the present case, the Board made twenty-seven findings of fact. Unlike the four findings in *Moore*, these twenty-seven findings provide ample information to permit appropriate judicial review. Third, in *Moore*, the Court determined that the applicant had satisfied his burden of making a *prima facie* showing of good moral character and that the Board had failed to rebut that showing. *Id.* at 640, 272 S.E.2d at 830. Here, the Board concluded, and we agree, that Braun failed to satisfy her burden of establishing a *prima facie* showing of good moral character and fitness. Finally, the Board's finding in *Moore* was conclusory, failing to identify which of *Moore*'s "several" statements were false. In contrast, the Board in the present case clearly sets forth in its finding of fact 25 which of Braun's statements were found lacking: "[t]he Applicant's *answers to questions attempting to show that her work at Harvest Moon Cafe & Catering was the active and substantial practice of law showed a lack of candor.*" (Emphasis added.) This is a specific factual finding that identifies Braun's statements about her work at Harvest Moon

Cafe as those showing a lack of candor. The finding allows adequate judicial review because the whole evidentiary record, coupled with the fact that the Board observed Braun's demeanor, supports this finding.

> When reviewing decisions of the Board of Law Examiners, this Court employs the whole record test. *In re Legg*, 325 N.C. 658, 669, 386 S.E.2d 174, 180 (1989), *cert. denied*, 496 U.S. 906, 110 L. Ed. 2d 270, (1990). Under this test, there must be substantial evidence supporting the Board's findings of fact and conclusions of law. *Id.* "Substantial evidence" has been defined as relevant evidence which a reasonable mind, not necessarily our own, could accept as adequate to support a conclusion. *In re Moore*, 308 N.C. 771, 779, 303 S.E.2d 810, 815-16 (1983).

*In re Golia-Paladin*, 344 N.C. 142, 149, 472 S.E.2d 878, 881 (1996), *cert. denied*, 519 U.S. 1117, 136 L. Ed. 2d 847 (1997).

Here, the Board determined that Braun's statements regarding her active and substantial practice of law for four out of the last six years immediately preceding 5 December 1996 were misleading; in particular, those statements purporting to show a practice at the Harvest Moon Cafe during the five-year period from November 1991 to December 1996. Misrepresentations and evasive or misleading responses that could obstruct full investigation into moral character are inconsistent with the truthfulness and candor required of a practicing attorney. *See In re Willis*, 288 N.C. 1, 18, 215 S.E.2d 771, 781, *appeal dismissed*, 423 U.S. 976, 46 L. Ed. 2d 300 (1975). The record in this case is replete with such responses by Braun justifying the Board's determination that she did not *actively and substantially* engage in the practice of law for at least four out of the last six years immediately prior to filing for comity in North Carolina. Further, after examination of the whole record, the evidence in this case also shows that the Board was fully justified in its determination that Braun's statements showed a lack of candor and had a negative bearing on her character.

The Board may accept or reject in whole or in part the testimony of any witness. *See In re Legg*, 337 N.C. 628, 638, 447 S.E.2d 353, 358 (1994). The Board has the opportunity to observe the applicant's demeanor during the hearing and thus is in a better position to determine the weight and sufficiency of the evidence and the credibility of the witness. *See Moore*, 308 N.C. at 780-81, 303 S.E.2d at 816.

## IN RE BRAUN

[352 N.C. 327 (2000)]

Braun claimed that she worked five hundred hours in excess of the hours required for comity admission. She calculated the time she devoted to the legal profession during the five-year period in question in fractions of months. Braun claimed six months of law practice related to starting her restaurant, working "well over 60 hours per week" between November 1991 and April 1992, the same period of time she devoted to opening and operating her restaurant. Among Braun's claims related to her business, quoted <u>verbatim</u> from her memorandum in support of her application, were the following:

A. November 1991-April 1992; Prepared Partnership Agreement; Filed D/B/A; Prepared Business Plan; Negotiated with Commercial Lenders, Negotiated and drafted 2 Commercial Leases; obtained all licenses and permits, Filed with all appropriate labor boards and government agencies, Negotiated equipment and company van leases; Negotiated lines of credit and purchase contracts with suppliers; Drafted catering contracts, Negotiated agreements with advertisers and Drafted employment applications and Company Policy. During this period Applicant worked well over 60 hours per week (6 Months).

B. 1992; On behalf of Harvest Moon Cafe appeared before the Appeal Board of Unemployment Insurance Division of the Labor Board in a matter regarding a former employee's application for unemployment. . . . (.5 month)

C. 1993; On behalf of Harvest Moon Cafe appeared before the Sanitation Hearing Officer regarding an alleged waste disposal violation. . . . (.25 month).

D. January 1991-November 1996; Represented and Assisted in representing Harvest Moon Cafe with on going legal disputes with it's [sic] Landlord, including but not limited to lack of necessary services (water and heat), contractor delays and quality of workmanship, excess utility charges, premises not meeting code, constructive eviction (excessive odors from neighboring beauty salon) and eviction. Applicant devoted at least 2 full months each year to these matters affecting Harvest Moon Cafe (12 months).

E. September 1994-June 1995; Assisted in representing herself in the Partnership Dissolution. (1 Month).

**IN RE BRAUN**

[352 N.C. 327 (2000)]

F. January-April 1996; Prepared and filed all necessary Incorporation Documents (including but not limited to S Corp. status, By Laws and Certificate of Assumed Name on behalf of Harvest Moon Cafe. (1 Month).

. . . .

I. June 1995-September 1995; On behalf of Harvest Moon Cafe prepared and successfully applied for Alcoholic Beverage Retail License. (1 Month).

J. 1992; Successfully negotiated on behalf of Harvest Moon Cafe a settlement agreement with telephone directory publishing company. (.25 month).

. . . .

Q. 1991-1996; Reviewed and negotiated all contracts entered into by Harvest Moon Cafe[.] (2 month).

In addition, Braun claimed she represented others such as vendors or her employees. Among those verbatim claims in her memorandum of support to the Board were the following:

G. February-April 1996; Prepared and filed all necessary Incorporation Documents (including but not limited to S Corp. status, By Laws and Certificate of Assumed Name on behalf of client, Data Systems, Inc. (1 Month).

. . . .

K. 1993; Successfully represented client before Amherst Court for Vehicle Traffic violations. (.25 month).

. . . .

R. 1996; On behalf of Client, successfully negotiated settlement with her former Accountant regarding her negligent professional services. (1 month).

S. 1996; Represented corporate client with regards to negligent omission in telephone directory. (.25 month)

T. July 1996-November 1996; Applicant Successfully represented herself in lawsuit against Radio Station for value of a trip she won as a door prize but never received. Applicant appeared in court a number of times and worked over 35 hours a week during this time period[.] (5 months).

**IN RE BRAUN**

[352 N.C. 327 (2000)]

Despite these and other numerous claims, Braun had no evidence to support her time estimates. She did not keep and present contemporaneous time or billing records. She did not present affidavits from her restaurant employees or others for whom she claimed to have performed legal work. She did not show on her tax returns any income from law practice. Further, Braun did not hold herself out as a practicing lawyer from November 1991 to November 1996, did not maintain a separate law office, did not maintain professional malpractice insurance, and did not attend formal continuing legal education classes. These facts are inconsistent with one being actively and substantially engaged in the practice of law. Testimony that is contradictory, inconsistent, or inherently incredible is a sufficient basis upon which to deny admission on character grounds. *See In re Elkins*, 308 N.C. 317, 326, 302 S.E.2d 215, 220, *cert. denied*, 464 U.S. 995, 78 L. Ed. 2d 685 (1983). When these inconsistencies are coupled with her exaggerated claims for time spent as legal counsel to her business and for representing others while at the same time claiming to be opening and operating a new restaurant business with all that attends that endeavor, Braun's evidence becomes inherently incredible.

Braun further testified that she was not paid for her legal services but instead received an in-kind exchange of trade. However, as the Board found in its finding of fact 17, Braun failed to report on her tax returns the fair value of what she received in "barter" for her legal services, thus compounding her misrepresentations. This cavalier attitude regarding her taxes is a further factual basis for the Board's conclusion that Braun "failed to satisfy her burden of proving to the Board that she possesses the qualifications of character and general fitness requisite for an attorney and counselor of law and that she is of such good moral character as to be entitled to the high regard and confidence of the public."

As long as the Board does not act in an arbitrary, capricious, or erroneous manner, it has, as an instrument of the State, "wide freedom to gauge on a case-by-case basis the fitness of an applicant to practice law." *Golia-Paladin*, 344 N.C. at 152, 472 S.E.2d at 883 (quoting *In re Application of Griffiths*, 413 U.S. 717, 725, 37 L. Ed. 2d 910, 917 (1973). Nothing in the record indicates that the Board acted in an arbitrary, capricious, or erroneous manner. Rather, the whole record indicates that the Board did precisely what it is charged by law to do—protect the public of North Carolina from those unfit to practice law.

We conclude that the Petitioner Braun was afforded a careful consideration of her application and that there was substantial evidence to support the Board's findings of fact and conclusions. Accordingly, we affirm the order of the trial court, which affirmed the 1 December 1997 order of the Board of Law Examiners denying Braun's application.

AFFIRMED.