IN THE SUPREME COURT OF NORTH CAROLINA

No. 410A14

(Filed 21 August 2015)

IN THE MATTER OF:  LYNN MARIE BURKE

Appeal of right pursuant to section .1405 of the Rules Governing Admission to the Practice of Law in the State of North Carolina from an order entered on 1 October 2014 by Judge Paul C. Ridgeway in Superior Court, Wake County, affirming the 14 May 2013 order of the Board of Law Examiners denying the applicant's application to stand for the July 2011 North Carolina Bar Examination.  Heard in the Supreme Court on 20 April 2015.

> *Robert F. Orr; and Poyner Spruill LLP, by Andrew H. Erteschik, Carrie V. McMillan, and J.M. Durnovich, for petitioner-appellant Lynn Marie Burke.*
>
> *Roy Cooper, Attorney General, by Robert C. Montgomery, Senior Deputy Attorney General, and H. Dean Bowman, Special Deputy Attorney General, for respondent-appellee North Carolina Board of Law Examiners.*

JACKSON, Justice.

In this case we consider whether the Board of Law Examiners (the Board) erred by concluding that petitioner Lynn Marie Burke "failed to carry her burden of proving she possesses the requisite general fitness and good moral character expected of attorneys licensed to practice law in North Carolina." We conclude that the Board's decision is supported by substantial evidence in view of the whole record. Accordingly, we affirm.

In May 2010, petitioner received her Juris Doctor degree from North Carolina Central University School of Law. After law school, petitioner initially applied for, and later received, a license to practice law in Washington, D.C. In October 2010, while her District of Columbia Bar application still was pending, petitioner applied to take the North Carolina Bar Examination. In her North Carolina Bar application, petitioner disclosed forty incidents between 1983 and 2004 in which she had been accused of criminal offenses including forgery, larceny, shoplifting, writing worthless checks, using a stolen credit card, possessing stolen property, and obtaining property by false pretenses. Petitioner acknowledged that many of these incidents had resulted in criminal convictions.

Because of concerns about her application, the Board sent petitioner a notice instructing her to appear at a hearing before a panel of the Board. The notice stated that during the hearing, petitioner would be asked to testify regarding the criminal charges that she had disclosed in her application. In addition, the notice stated that petitioner would be questioned about several criminal charges that she failed to disclose in her applications for admission to law school, the District of Columbia Bar, and the North Carolina Bar. The hearing was conducted on 28 September 2011, and subsequently, the panel directed petitioner to appear at a de novo hearing before the full Board.

The de novo hearing was held on 9 and 10 January 2013. Petitioner testified at the hearing in support of her application and explained that, beginning in the 1980s, she committed a number of criminal offenses, which she characterized as being motivated by financial necessity. Yet she also stated that her life started to change after a particular incident of shoplifting that occurred in 2002. Petitioner testified that on this occasion, which occurred the day of her twin daughters' prom, she had attempted to take prom dresses from a department store by concealing them in a bag. Petitioner stated that after she was caught and her daughters learned what she had done, the extent of her criminal conduct was "put in front of [her] face." She testified that subsequently, she began going to counseling and started working for her father. She testified that she had not stolen anything since the incident in 2002.

Petitioner stated that she had been truthful about her criminal history when applying to law school, the District of Columbia Bar, and the North Carolina Bar. Although petitioner acknowledged that she had "neglected" to include some of her criminal history in her law school application and her two bar applications, she testified that the omissions occurred because she "just forgot." Petitioner stated that she had amended each application to correct the omissions.

Petitioner was questioned about discrepancies between her testimony concerning the shoplifting incident from 2002 and two written statements she had drafted. Specifically, petitioner was asked about the following statement initially

submitted as part of amendments to her District of Columbia and North Carolina Bar applications, which appeared to contain materially different facts when compared with her testimony:

> I was at Crabtree Valley mall with my twin daughters. They were going to the prom in a week. I had their prom dresses in a shopping bag to take them to be hemmed at the tailor shop. While I was waiting for them, I went to Dillard's Department store. I knew that they did not have the proper undergarments to wear under the dresses and I attempted to take them. . . . [T]he store security guard . . . . charged me with larceny of the dresses and shoplifting of the undergarments. My daughter went back later on that day with the receipts for the dresses and was given them back.

Next, petitioner was asked about a later filing submitted to the District of Columbia Court of Appeals Committee on Admissions (District of Columbia Bar Committee) asserting that the incident occurred one day before the prom and involved the attempted theft of two prom dresses and shoes. Petitioner stated that the discrepancy arose because she had difficulty obtaining records related to the incident. Petitioner testified that the statement made in the amendments to her District of Columbia and North Carolina Bar applications came from memory and contained inaccurate details. She stated that "it took . . . a couple of weeks" to obtain relevant documents, but explained that she had more complete information by the time she prepared the later filing submitted to the District of Columbia Bar Committee. Although the revised narrative was introduced at the hearing and was part of the record before the

Board, petitioner acknowledged that she also "should have re-amended" her North Carolina Bar application to reflect the updated information.

On 14 May 2013, the Board entered an order denying petitioner's application. In its order the Board noted that petitioner had committed a substantial number of criminal offenses throughout the 1980s and 1990s. The Board found that petitioner had failed to disclose six criminal convictions on her law school application and that she had received a letter of caution from the school "remind[ing]" her of her "obligation to provide full disclosure." In addition, the Board stated that petitioner had omitted seven criminal charges on her District of Columbia Bar application and six charges of failure to appear on her North Carolina Bar application.

The Board discussed how petitioner's accounts of the 2002 shoplifting incident differed. The Board explained that in petitioner's initial written account, she asserted that "she had taken the prom dresses (previously purchased) to a tailor to be hemmed," and after unsuccessfully attempting to steal undergarments to go with the dresses, she eventually produced receipts for the dresses and had them returned to her. The Board noted that this written account differed from petitioner's testimony describing the event and concluded that the differences "showed a lack of candor."

Ultimately, the Board found by the greater weight of the evidence that

> (a)  [Petitioner] failed to disclose on her application to North Carolina Central University School of Law six criminal convictions including Resisting a Public

Officer, four Worthless Checks, and Misdemeanor Forgery
and Uttering,

(b)     [Petitioner] failed to disclose seven criminal
charges on her District of Columbia Bar Application,

(c)     [Petitioner] was charged on six (6) occasions
with Failure to Appear,

(d)     [Petitioner] failed to disclose six (6) charges of
Failure to Appear on her North Carolina Bar Application,

(e)     [Petitioner] was charged with 40 criminal
charges between 1983-1999,

(f)     In May 1988, [petitioner] was convicted of
multiple felony counts of False Pretense and Obtaining
Property by False Pretenses and placed on probation,

(g)     Within a matter of months, [petitioner] began
shoplifting again and was arrested.  She was sentenced to
10 years imprisonment and was incarcerated in North
Carolina for 20 months,

(h)     In 2002, [petitioner] attempted to steal two
prom dresses from a department store in Raleigh, North
Carolina and was charged with Larceny.   [Petitioner]
showed a lack of candor in her testimony regarding this
event which differed from the way she had described the
event in her District of Columbia Bar [A]pplication,

(i)     [Petitioner] ignored her obligations to the
courts of North Carolina which caused her to be charged on
six separate occasions with Failure to Appear.

The Board concluded that "the foregoing conduct, individually and collectively, as

well as [petitioner's] testimony at her full Board hearing regarding these matters

demonstrate a lack of candor and truthfulness."  Accordingly, the Board ruled that

petitioner had failed to carry her burden of proving that she possesses the requisite

general fitness and good moral character expected of North Carolina attorneys. Petitioner filed a petition for judicial review in the Superior Court, Wake County. Applying the whole record test, the court found that the Board's decision was supported by substantial evidence and therefore affirmed that decision. Petitioner appealed to this Court as of right pursuant to section .1405 of the Rules Governing Admission to the Practice of Law in the State of North Carolina.

In her appeal petitioner argues that the Board's findings and conclusions related to her alleged misstatements and omissions are not supported by the evidence. Specifically, petitioner contends that these misstatements and omissions were unintentional and immaterial, and did not demonstrate a lack of candor and truthfulness. We disagree.

This Court uses the whole record test when reviewing decisions of the Board. *In re Gordon*, 352 N.C. 349, 352, 531 S.E.2d 795, 797 (2000) (citations omitted). The whole record test requires this Court to evaluate all the evidence, including "that which supports as well as that which detracts from the Board's findings," and determine whether substantial evidence supports the Board's findings of fact and conclusions of law. *Id.* at 352, 531 S.E.2d at 797 (quoting *In re Moore*, 308 N.C. 771, 779, 303 S.E.2d 810, 816 (1983)). Substantial evidence is "relevant evidence which a reasonable mind . . . could accept as adequate to support a conclusion." *Id.* at 352, 531 S.E.2d at 797 (alteration in original) (quoting *In re Golia-Paladin*, 344 N.C. 142,

149, 472 S.E.2d 878, 881 (1996), *cert. denied*, 519 U.S. 1117, 117 S. Ct. 962, 136 L. Ed. 2d 847 (1997)).

"Good moral character has many attributes, but none are more important than honesty and candor." *In re Legg*, 325 N.C. 658, 672, 386 S.E.2d 174, 182 (1989) (quoting *In re Green*, 464 A.2d 881, 885 (Del. 1983) (per curiam)), *cert. denied*, 496 U.S. 906, 110 S. Ct. 2589, 110 L. Ed. 2d 270 (1990). "Testimony that is contradictory, inconsistent, or inherently incredible is a sufficient basis upon which to deny admission on character grounds." *In re Braun*, 352 N.C. 327, 335, 531 S.E.2d 213, 218 (2000) (citing *In re Elkins*, 308 N.C. 317, 326, 302 S.E.2d 215, 220, *cert. denied*, 464 U.S. 995, 104 S. Ct. 490, 78 L. Ed. 2d 685 (1983)). Similarly, "[m]aterial false statements can be sufficient to show the applicant lacks the requisite character and general fitness for admission to the Bar." *In re Legg*, 325 N.C. at 672, 386 S.E.2d at 182 (quoting *In re Elkins*, 308 N.C. at 327, 302 S.E.2d at 221). In the case *sub judice* the Board concluded that petitioner had failed to carry her burden of demonstrating that she possesses the requisite character for admission, partly because of her past criminal conduct and partly because of numerous misstatements and omissions that were revealed by the evidence. The evidence establishes that petitioner submitted inaccurate accounts of the 2002 shoplifting incident to both the Board and the District of Columbia Bar Committee. Her initial narrative contained specific but inaccurate details, such as taking the prom dresses to be hemmed, being falsely accused of shoplifting the dresses, and having the dresses later returned to her. Subsequently,

petitioner submitted to the District of Columbia Bar Committee a revised statement asserting that the incident occurred on the night before the prom and that she stole prom dresses and shoes, while in her North Carolina Bar application, petitioner stated that the incident happened a week before the prom. Petitioner acknowledged that she "should have re-amended" her North Carolina Bar application to reflect this revised statement. Finally, during her testimony before the Board, petitioner stated that the incident occurred both on the day of the prom and the night before. When she was asked "exactly" what she attempted to take, she responded, "It was the dresses," and when asked whether she attempted to take "[a]nything else," she said, "No." These three accounts each differ significantly with respect to factual details such as when the incident occurred and what was taken. The Board did not err by considering petitioner's testimony and other statements and concluding that she demonstrated "a lack of candor."

Moreover, "a purposeful pattern of omitted material information" can support a conclusion that an applicant has failed to establish the good moral character required to practice law. *In re Legg*, 325 N.C. at 672, 386 S.E.2d at 182. Here petitioner omitted multiple criminal charges when preparing her law school application, District of Columbia Bar application, and North Carolina Bar application. On 9 September 2008, petitioner sent a letter to Dean Raymond Pierce of North Carolina Central University School of Law stating that she had discovered that she had omitted six criminal convictions from her law school application and

requesting to amend her application. These convictions were for resisting a public officer, writing worthless checks, and misdemeanor forgery and uttering. She received a letter of caution from the University dated 13 May 2009 "as a reminder of [her] obligation to provide full disclosure." This letter specifically warned petitioner that the omissions in her law school application "might be perceived as a willingness to withhold or omit information that is not favorable to [her], in circumstances in which complete candor is required."

Nevertheless, in May 2010, when she applied for admission to the District of Columbia Bar, petitioner again omitted seven criminal charges including resisting a public officer, writing worthless checks, and obtaining property by false pretenses. A charge related to the shoplifting incident from 2002 also was omitted. Petitioner amended her application to correct these omissions in a filing dated 11 January 2011, which noted that the omissions were "brought to [her] attention . . . by the Board of NC Bar Examiners" on 5 January 2011. Finally, in a filing dated 19 January 2011, petitioner amended her North Carolina Bar application to include six charges of failure to appear. Petitioner stated that she omitted these charges from her initial application because she "did not consider" charges of failure to appear that arose from traffic offenses. Ultimately, the evidence establishes omissions of multiple criminal charges in three separate applications, even though petitioner previously had received a letter emphasizing the importance of full disclosure.

The Board considered the evidence in the record as a whole and concluded that petitioner had demonstrated "a lack of candor and truthfulness." This Court will not "replace the Board's judgment as between two reasonably conflicting views, even though the [C]ourt could justifiably have reached a different result had the matter been before it *de novo*." *In re Elkins*, 308 N.C. at 322, 302 S.E.2d at 217-18 (quoting *Thompson v. Wake Cnty. Bd. of Educ.*, 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977)). "As long as the Board does not act in an arbitrary, capricious, or erroneous manner, it has, as an instrument of the State, 'wide freedom to gauge on a case-by-case basis the fitness of an applicant to practice law.'" *In re Braun*, 352 N.C. at 335, 531 S.E.2d at 218 (quoting *In re Golia-Paladin*, 344 N.C. at 152, 472 S.E.2d at 883). Applying the whole record test, we conclude that petitioner's past conduct, her contradictory statements about the shoplifting incident in 2002, her acknowledgment that she "should have re-amended" her North Carolina Bar application after learning that she had submitted incorrect information to the Board, and her numerous omissions from law school and bar applications support the Board's conclusion. Accordingly, petitioner's argument is without merit.

Next, petitioner argues that the Board's Guidelines for Determining Character and Fitness of Bar Applicants require the Board to consider "evidence of rehabilitation." Petitioner contends that the Board failed to make any findings of fact regarding whether she had demonstrated rehabilitation. "Administrative agencies must find facts when factual issues are presented." *In re Rogers*, 297 N.C. 48, 56, 253

S.E.2d 912, 918 (1979). Even so, "[i]n cases in which all the essential facts either appear on the face of the application or are otherwise indisputably established, the Board need only weigh the evidence and determine whether the applicant has shown his good moral character." *Id.* at 56, 253 S.E.2d at 917. In *In re Rogers* this Court explained that the Board erred by failing to make findings of fact because, given the evidence presented, "[t]he Board could have found that [the applicant] had not shown his good moral character only if it believed" that he had committed two specific wrongful acts, which he denied. *Id.* at 60, 253 S.E.2d at 920. But in the case *sub judice* counsel for petitioner stated at the hearing that "the facts in this case are not in dispute." Similarly, counsel for the Board did not dispute petitioner's assertion that she had turned her life around and subsequently "has done remarkable things in her life." The Board made proper findings describing both petitioner's past conduct and her present failure to provide full and accurate disclosure in her law school and bar applications, weighed all the evidence, and reached a decision. The Board did not err by declining to make specific findings about rehabilitation when its ultimate decision was based upon "an exercise of delicate judgment" after evaluating undisputed evidence. *Id.* at 56, 253 S.E.2d at 917 (quoting *Schware v. Bd. of Bar Examiners*, 353 U.S. 232, 248, 77 S. Ct. 752, 761, 1 L. Ed. 2d 796, 807 (1957) (Frankfurter, Clark & Harlan, JJ., concurring)). Accordingly, petitioner's argument on this issue is also without merit.

For the foregoing reasons, we affirm the order of the Superior Court, Wake County, which affirmed the Board's 14 May 2013 decision denying petitioner's application to stand for the July 2011 North Carolina Bar Examination.

AFFIRMED.